## OSCAR WOODY v. NANNIE E. BALL.

Eastern Section.   July 23, 1927.

Petition for Certiorari denied by Supreme Court, October 11, 1927.

1. **Master and servant.   Failure of master to discharge a servant does not constitute a ratification of the servant's acts.**
    In an action to recover damages for death caused from being struck by a bus where the defense was that the driver was acting beyond his scope of employment and it was urged that the master ratified the servant's acts by not discharging him, held that the mere failure of the master to discharge the servant after the act had been committed did not constitute a ratification of the acts causing the injury.

2. **Evidence.   Chapter 152 of the Acts of 1921 does not create substantive evidence to take a case to jury where there is positive evidence that the servant was driving the car without the master's permission at the time of the accident.**
    In an action to recover damages for death caused by being struck by a bus where the uncontradicted evidence of the defendant showed that the servant was driving the bus beyond his scope of employment and without the· master's permission, and the court permitted the case to go to the jury on the theory that chapter 162 of the Acts of 1921, created substantive evidence that the servant was acting with the master's consent, held that the statute has no effect when there is positive uncontradicted proof to the contrary, and the court erred in letting the case go to the jury.

3. **Master and servant.   Test of master's liability for injury caused by servant.**
    The test to determine whether a master is liable to a stranger for the consequences of his servant's misconduct, is to inquire· whether the latter was doing what he was employed to do at the time he caused the injury complained of. If he was, the fact that he was not doing it in the way expected is immaterial. But if at the time he did the act which caused the injury, he was not acting within the scope of his employment, the master is not liable.

4. **Master and servant.   A master is not liable for his servant's torts or willful acts done without his authority.**
    A master is liable for the injury done to others by his servant's negligent conduct while in his employment, but is not liable for his servant's

torts or wilful acts done without his authority, and, in the latter case, it can make no difference whether such wilful act of the servant be done while he is in the performance of some lawful service required by the master or be entirely disconnected with such service.

**5. Master and servant. Evidence. Evidence held to show master not liable for servant's negligence.**

In an action to recover damages for death caused by being struck by a bus where it was shown that the driver was employed to bring children to school on a certain route and on the morning in question he was making another route for another bus driver without his master's knowledge or consent, held that the master could not be held liable for the driver's negligent acts on that trip because he was acting beyond the scope of his employment.

Appeal in Error from Circuit Court, Knox County; Hon. A. C Grimm, Judge.

Reversed and dismissed.

Johnson and Cox, of Knoxville, for plaintiff in error.

Smith, Carlock, Poore and Eagle, of Knoxville, for defendant in error.

PORTRUM, J. This suit was brought by Nannie E. Ball, administratrix, against R. E. Boring and wife, Annie Boring, and Oscar Woody in 1925, to recover $10,000 as damages for personal injuries sustained by W. A. Ball, who was struck and painfully injured in September, 1925, by a motor bus being used for the transportation of school children over one of the public highways in Knox county about one mile east of the Farragut school, on the highway leading from Kingston Pike to Concord, Tennessee. It is alleged that Ball was struck by the bus while walking along the public highway when the bus was being operated by the defendant's inexperienced servant engaged in the business of the defendant and in a negligent and careless manner without fault upon the part of Ball, and because of said injury received in this negligent manner the said Ball died. An attachment for the motor bus was issued upon the ground that it was operated in violation of the statute, but after the hearing of the proof in the case the court sustained a plea to the attachment and dismissed the same. It also developed on the hearing that R. E. Boring and wife had no interest in the motor bus, or the contract for the transportation of the school children, and upon a motion the verdict was directed as to them. At the same time the court directed a verdict upon the question of the inexperience of the driver, holding that there was no proof that the driver was not experienced. It developed during the trial of the case that the defendant Oscar Woody had a contract with Knox county for the transportation of school children over a designated route on Kingston Pike, about eight miles in length, the school building being located near the center of the route. And it further appears that a man by the

name of Fox had a like route, running from the same school building—that is the Farragut school, leading over the road to Concord, and on the morning of the accident the driver of Woody's bus, having delivered his children to the school building, and the man's bus who operated the bus over the Fox route having broken down, requested the driver of the Woody bus to run the Woody bus over his route and bring in the children for him. And due to this request, without the knowledge or consent of Woody, the young driver took Woody's bus over the Concord route, collecting the children, and upon his return, and while going down a steep hill the deceased, Ball, walked out in the road, and, probably because of the loss of his left eye, did not see the bus approaching and made a step forward and was struck by the protruding body of the bus, the wheels and fender of the front part of the bus having passed him. He was knocked unconscious, and by reason of the injury he died the following day.

The plaintiff for some reason has not sued Fox or those operating the bus line from the Farragut school building to Concord. He elected to sue the Borings and Woody. The Borings have been dismissed, and Woody defends upon the ground that his servant stepped apart from his duties and was at the time of the accident engaged in an undertaking of Fox, while the operator of Fox's route, and not an undertaking of the master.

The case presents this sole question, but we find that there is evidence of the negligent operation of the bus, entitling the case to go to the jury. We do not think it necessary to discuss this phase of the case, because we believe the parties rely upon the question above made as the defense to the action.

It is not contended that Woody knew of the act of his driver in taking the bus over the route of Fox, nor that it was a part of his duty to do so, but it is insisted that Woody later ratified the act of his servant, because he did not reprimand him when he learned of the accident, nor discharge him. The driver was a boy sixteen years of age. We might say here the excuse given by Woody was a reasonable one, he says the boy was in trouble because of the accident, and it would have done no good to reprimand him after the accident. He had employed the boy by an arrangement with the boy's father, and we do not think the fact that he retained him in his services was a ratification of the acts causing injury. So the case turns upon the question of whether the boy at the time of the accident was acting for the master in the scope of his employment, or had stepped aside and was acting for himself, or another, in a matter beyond the scope of his authority.

This question was presented upon the motion for a directed verdict, but the learned trial judge was of the opinion that since

chap. 162, Acts 1921, made the fact of the proof of the ownership of the automobile, which was admitted, prima facie evidence, and raised the presumption that the said automobile was being operated and used with the authority, consent and knowledge of the owner in the very transaction out of which the injury or damage, or cause of action, arose, that the statute itself created substantive evidence, and therefore under the "any evidence rule" there was evidence that the car was being operated by the authority, knowledge and consent of the owner at the time of the accident, which evidence made a question for the jury. This question is earnestly pressed by counsel representing the plaintiff below, and it is insisted that since chap. 59, Acts 1923, provides that proof of registration of ownership of a motor propelled vehicle shall be prima facie evidence that such automobile or truck was being operated by the servant for the owner's use and benefit, within the scope of his employment; therefore the statute goes further than creating a presumption, but raises substantive evidence. Hence the trial judge correctly submitted the case to the jury, notwithstanding the actual proof by all the parties was that the driver of the Woody bus, without the knowledge or consent of the owner, had, at the request of the operator of the Fox route, gone over it for the purpose of bringing in the children for the operator of the bus of the Fox route.

We do not think any such result was contemplated or intended by the act of the legislature. The policy of this law, as has been defined, was to cast the burden upon the party who was best able to prove facts, these facts being generally in the possession of the defendant and not the plaintiff. When the uncontradicted facts once show the ownership in another, or that the servant was on business other than that for the master, and then by reason of the statute should the case be submitted to the jury, in order that it might exercise its caprice and find for the plaintiff when the actual facts were all in favor of the defendant? If this were true, then if a thief stole a car the owner could be held liable for injury done by the thief, or a person could without authority register a motor vehicle in the name of another and make the other responsible for his misdeeds, or masters might in all instances be held liable for the acts of the servant when they stepped aside from their duties and were acting beyond the scope of their authority. It might be said that juries could be depended upon to liberate defendants when the facts, were as above stated. But it is not the province of the jury to be judge of the law, and it is now held that where the facts are undisputed, it is a question for the court to apply the law. Other reasons might be given in support of the statement that the legislature did not intend by these acts to

create more than a presumption which can be overthrown by proof, and when proofs are present there is neither foundation nor room for a presumption.  Wright v. Frank, 140 Tenn., 535, 205 S. W., 434.

This leaves us with the question of the liability of the master for the act of the servant in this instance.  In Babbit's Second Edition on Motor Vehicles the rule is stated as follows:

"Section 801.—American View.—The American view coincides with that expressed in the English cases quoted.  It is generally stated, in McCarthy v. Timmons, (12) where Mr. Justice Hammon speaking for the Supreme Court says:

" 'The well established rule as to the extent of the liability of the master for the act of his servant, so far as is material to this case, is that if the act is done without the authority of the master and not for the purpose of executing his orders or doing his work, then he is not responsible, but if it is done in the execution of the authority given by the master and for the purpose of performing what he has directed, then he is responsible, whether the act be negligent or wilful.  The only trouble is in the application of the rule, and it is not easy to reconcile the cases.' "

"In Danforth v. Fisher (13) Supreme Court of New Hampshire, by Mr. Justice Young, says:

"The test to determine whether a master is liable to a stranger for the consequences of his servant's misconduct, is to inquire whether the latter was doing what he was employed to do at the time he caused the injury complained of.  If he was, the fact that he was not doing it in the way expected is immaterial."  (citing cases) "But, if at the time he did the act which caused the injury, he was not acting within the scope of his employment, the master is not liable."  . . .

"Section 806, page 533.—Tests of Doctrine.—

"It seems to follow from the foregoing that the two principal questions for determination in all cases of respondeat superior, are (1) the existence of the contractual relation, and (2) whether the act or omission which is the basis of the particular proceeding, was one performed within the scope of that relation.  Shearman & Redfield (23) state the matter in this language:

"In determining whether a particular act is done in the course of the servant's employment, it is proper, first, to inquire whether the servant was at the time engaged in serving his master.

"If the act is done while the servant is at liberty from service and pursuing his own ends exclusively, there can be no question of the master's freedom from all responsibility, even though the injury complained of could not have been committed without the facilities afforded to the servant by his relation to his master."

The authority in Tennessee conforms to the authorities above stated.

In the case of Puryear v. Thompson, 24 Tenn., 397, it is said:

"A master is liable for the injury done to others by his servant's negligent conduct while in his employment, but is not liable for his servant's torts or wilful acts done without his authority, and, in the latter case, it can make no difference whether such wilful act of the servant be done while he is in the performance of some lawful service required by the master or be entirely disconnected with such service. Acc. Cantrell v. Coldwell, 3 Head, 474, citing this case." (Cited in: 3 Shannon's Cases, 266; 14 Lea, 198, 201).

The court in deciding the case of Diehl & Lord v. Ottenville, 14 Lea, page 195, quotes:

" 'In Cooley on Torts, page 535, it is said the liability of the master only arises when that which is done is within the real apparent scope of the master's business. It does not arise where the servant has stepped aside from his employment to commit a tort, which the master neither directed in fact, nor could it be supposed from the nature of his employment to have authorized or expected the servant to do. The principles announced are illustrated, by the author, by showing that a conductor in charge of a railway train who wrongfully ejects a passenger subjects the company to a claim for damages. The reason is, that the conductor has charge of the train, clothed with discretionary power, and the wrong was done in the exercise of the authority conferred upon the conductor. But if the conductor leaves the train to injure his personal enemy the master is not liable. This would be a personal trespass of the conductor, whereas the other, in ejecting the passenger, would be an act done in the course of his employment. The same author (197) says, page 536, that in determining whether or not the master shall be responsible, the motive of the servant is important. If he supposes he is acting in furtherance of the master's interest under a discretionary power, the case will generally have an aspect quite different from what it would present if it were manifest that the servant was actuated by malice, irrespective of the master's interest. But the motive is not conclusive; the test of the master's responsibility is not the motive of the servant, but whether that which he did was something his employment contemplated, and something which if he should do it lawfully he might do in his employer's name. Says Hoar, J.: If a servant, wholly for a purpose of his own, disregarding the object for which he is employed, and not intending by his act to execute it, does an injury not within the scope of his employment, the master is not liable,' Cooley on Torts, 536-7.

"Obviously to make the master liable for the servant's tort, it must be committed in a negligent or wanton and reckless manner and in the execution or accomplishment of the business of the master. Schoul. Dom. Rel., 636. If the servant step aside from his employment, that is, abandon it for the time being, to commit a tort not within the course or scope of his employment, the master is not liable. We do not understand that it is necessary, within the meaning of that term, that he should literally and physically 'step aside' from the locus in quo; he is serving his master in the performance of his legitimate duties before he can abandon or 'step aside' from that service and commit a tort not within the scope of his employment. But where the wrong is done wholly for his own purpose, disconnected from the execution of his master's orders, the servant and not the master is liable. He has 'stepped aside' from the course or scope of his employment."

In disposing of the case of James Cantrell v. William Coldwell, 3 Head, page 472, the Supreme Court quoted with approval the following in regard to the authority of servant or agent:

"But it is well settled that the master is not answerable for the wilful and unauthorized acts of the servant, if they be done, not in the execution of, but altogether aside from the authority given by the master; unless they are subsequently ratified or adopted by him, for his own benefit. Beyond the scope of his employment, the servant or agent is, in contemplation of law, as much a stranger to his master as any third person. The master' does not undertake for the conduct of his servant beyond the scope of the authority to him; and consequently, his wilful and unauthorized acts cannot be regarded as the acts of his master. Blackstone lays down the rule thus: If a servant, by his negligence, does any damage to a stranger, the master shall be answerable for his neglect. But the damage must be done while he is actually employed in the master's service; otherwise the servant shall answer for his own behavior. I Bl. Com. 431; McManus v. Crickett, 1 East, 106; Smith's Master and Servant, p. 151 to 162 (2 Vol. Law. Lib., sixth series). And the principles apply in the case of principal and agent. Story on Ag., sec. 452, 456."

The last case upon the subject is Stone Company v. Pugh, 115 Tenn., 688, 91 S. W., 199; 4 L. R. A. (N. S.), 804a. In disposing of the case the court said:

"From a careful examination of this record we are unable to discover any legal ground upon which the verdict and judgment can rest. The case made out is one where a skillful driver is placed in charge of his master's wagon, with direction that he deliver pieces of dressed stone at a place where they are to be used in making some improvement. Having arrived there and unloaded

the stone, a number of children, who were gathered about, in answer to his invitation, got upon the wagon to enjoy a ride, and while riding, away from the premises one of these children, either in falling or undertaking to jump from the wagon, is run over by one of its wheels and is so injured that death soon results. It is not claimed that the driver was either expressly or by implication authorized by his master to extend the invitation to the children to get upon the wagon, or that this act of the servant was in any sense or degree within the scope of his employment or in furtherance of his master's business. Under these facts we think it is well settled the master cannot be called upon to respond in damages for the injury resulting from such unauthorized act. Puryear v. Thompson, 5 Humph., 397; Cantrell v. Coldwell, 3 Head, 472; Diehl v. Ottenville, 14 Lea, 191.''

We think the rule is that where the servant acts beyond the scope of his authority, without the consent or knowledge of the master, the master cannot be held responsible for the act of the servant.

It is said in the cases cited the servant stepped aside on a mission of his own and that this is not true in this case. He stepped aside on a mission for a third party, which is the same as if he had stepped aside on a mission of his own, and in neither case is the master responsible.

Had the plaintiff sued the operator of the Fox route, the jury doubtless would have dismissed Woody. The fact that the plaintiff sued Woody, under the circumstances, makes it imperative on the court to dismiss the case. The fact that there is a widow and four children, makes it an irksome duty upon the court in dismissing the lawsuit and leaving them without remedy. We hold that the parties sued a person not liable, and we cannot escape from the duty confronting us.

The trial judge should have directed the verdict, and this is done here, and the case is dismissed at the cost of the losing party.

Snodgrass and Thompson, JJ., concur.