GEORGE P. WELCH v. MORRELL YOUNG, Administrator, etc.

Middle Section. February 3, 1930.

Petition for Certiorari denied by Supreme Court, June 28, 1930.

W. E. Norvell, Jr., and Norman R. Minick, of Nashville, for plaintiff in error.

Seth M. Walker and Jno. J. Hooker, of Nashville, for defendant in error.

FAW, P. J. Morrell Young, as the administrator of the estate of his deceased mother, Mrs. Susie E. Young (hereinafter called plaintiff), recovered a judgment for $5000, based upon the verdict of a jury, in the Second Circuit Court of Davidson County, against George P. Welch (hereinafter called defendant), and defendant appealed in error to this court.

There are two, and only two, assignments of error, and the second assignment, which relates to the exclusion of certain testimony, is seemingly not pressed by the able counsel for defendant. However, we will again refer to the second assignment later in this opinion.

In support of the first assignment of error, it is insisted, through an able and persuasive brief and oral argument at the bar, that the trial court erred in not granting defendant's motion for peremptory instructions made at the conclusion of all the proof and renewed in the motion for a new trial.

The proof shows, without dispute, that about 5:30 o'clock p. m., on December 15, 1927, plaintiff's intestate, Mrs. Susie E. Young, was struck and injured by a Ford auto truck owned by defendant and driven at the time by one of defendant's employees, and, as a result of the injuries thus received, Mrs. Young died during the evening of the next day.

Thereafter, viz.: on January 11, 1928, the action now before s, in which plaintiff sued for $25,000 as damages for the alleged wrongful death of his intestate, was brought in the circuit court, and, on May 22, 1928, plaintiff filed his declaration in three counts, to which defendant interposed a plea of not guilty.

The averments of the declaration, with respect to the alleged negligent conduct of defendant's agent and servant, as the proximate cause of the injuries and death of plaintiff's intestate, are well stated in the charge of the trial court to the jury, and, as a matter of convenience, we quote same as follows:

"The first count charges, after setting out the circumstances under which the plaintiff claims the deceased was killed, that while she was standing in the street, and in the exercise of ordinary care, the agent and servant of the defendant while driving a certain truck in a westerly direction, towards town, in an attempt to go around another automobile driving in the same direction and thus placed said truck in the middle or south of the middle of said Main street, said servant in charge of said truck, without keeping a proper lookout for pedestrians

crossing the street, and without exercising ordinary care, at a fast, dangerous, reckless and unlawful rate of speed, although plaintiff's intestate was in full view of him, drove said automobile upon and against her with great force and violence and on account of which she was hurled upon and against the ground, etc.

"The second count in the declaration charges that the agent and servant of defendant, violated certain ordinances of the City of Nashville, which provide it shall be unlawful for any vehicle to exceed a speed of twenty miles per hour in the City of Nashville, it being charged that said ordinance was violated and that as a result, directly and proximately caused the accident and death of plaintiff's intestate, Mrs. Young.

"The third count of the declaration charges that the agent or servant of the defendant, while driving the truck in question, at the time of the accident, violated another ordinance of the City of Nashville, which provided that vehicles should be driven as near the right hand curb as possible in the direction in which the vehicle was traveling. This ordinance will be more fully explained to the jury later on in the court's charge."

There was material evidence before the jury which, if true, was sufficient to support a finding that the driver of defendant's truck was negligent as charged in the declaration, and that such negligence of the driver was the proximate cause of the injuries and death of plaintiff's intestate, and there is no claim to the contrary in this court.

The contention here, on behalf of defendant, is that it appears from undisputed proof that W. F. Brawner, who was driving defendant's truck when it struck Mrs. Young, was not at that time operating the truck for the defendant's use and benefit or within the course and scope of Brawner's employment as the servant of defendant, but that Brawner was then operating the truck for his own personal use and benefit and on an errand entirely personal to him.

During the period of time covering the transactions involved in this case, the defendant, Geo. P. Welch, was engaged in the "dry cleaning" business, which was operated in a building at 606 Main street in the City of Nashville, with four "branch offices" in other parts of the city. The business was conducted under the trade name of "American Dry Cleaners" and defendant was its sole owner.

Defendant owned and used eight Ford auto trucks in his dry cleaning business, each of which was painted red and had the words "American Dry Cleaners" as an "insignia" on its body.

When not in use, these trucks were kept in defendant's garage at his main plant at 606 Main street.

It was one of the trucks above mentioned which struck Mrs. Young. Brawner was regularly employed by defendant as a truck driver at the time of the accident in question, and for several weeks, possibly a few months, theretofore.

The defendant's truck drivers, including Brawner, went to work, under their employment, ordinarily at 7:30 a. m. each day, but they had no definite hour for the end of the day's work. They would "sometimes leave at dark and other times keep on into the dark, depending on how much work they had to carry out for the day."

Defendant Welch was called and examined as a witness on behalf of plaintiff, and he testified that he was the owner of the auto truck driven by Brawner at the time it collided with Mrs. Young, and that said truck was registered, and license issued, in his (defendant's) name by the clerk of the County Court of Davidson county. This was (by virtue of the Act of 1921, chapter 162, as amended by the Act of 1923, chapter 59) prima-facie evidence that said auto truck was, at the time it struck Mrs. Young, being operated by Brawner for the defendant's use and benefit and within the course and scope of Brawner's employment as the servant of defendant.

Although unimportant since the Act of 1923, chapter 59, supra, the admitted facts of the instant case were sufficient, without reference to said statute, to raise a presumption that Brawner was acting within the course of his employment at the time in question. This would result from the application here of the ruling of the Supreme Court in Frank v. Wright, 140 Tenn., 535, 539, 205 S. W., 434, wherein it was held that a servant may be presumed prima-facie to have been acting in the course of his employment when it appears, not only that his master was the owner of the automobile the servant was driving, but also that, at the time when the alleged tort was committed, the automobile was being used under conditions resembling those which normally attended its use in the master's business.

However, it is unnecessary to point out the specific facts which bring the case now before us within the rule just stated, as the statute (Act of 1923, chapter 59), includes and broadens the presumption defined in Frank v. Wright, supra.

W. F. Brawner, the driver of defendant's truck involved in this case, testified, as a witness for defendant, that he was a married man and he and his wife lived together about six city blocks north of the defendant's aforementioned dry cleaning plant; that his (Brawner's) wife was working at McEwen's Laundry in the City of Nashville at the time of the accident in question; that his wife's day's work at the laundry ended at 5:30 o'clock each afternoon, and he was likewise supposed to get off from work at 5:30 o'clock

in the afternoon when there was no occasion for him to make further deliveries with the truck, and that he had, on several occasions prior to December 15, 1927, taken his wife home from McEwen's Laundry in defendant's truck; that about 5:30 o'clock in the afternoon of December 15, 1927, he left defendant's plant at 606 Main street (where he had been "working around the plant" for about an hour), took the truck in question, which was parked on Main street in front of the plant, and started to McEwen's Laundry for the purpose of taking his wife home; that he had driven for a distance of one block and a part of another block westward on Main street (on his way by the most direct route towards McEwen's Laundry), when the truck he was driving struck Mrs. Young; that he did not expect to haul anything for his employer on this trip, and his only purpose when he left the plant on this occasion was to go to McEwen's Laundry, get his wife, take her home in the truck and return the truck to the defendant's plant.

Brawner further testified as follows:

"Q. Who out there at the plant, if any one, besides yourself, knew where you were going? A. If anybody knew it I don't know it.

"Q. Who was there in charge of the plant at the time you left? A. Mr. Myers and Mr. Hayes,—they were all there.

"Q. Who was the main one, of those three, who was the boss, of those three? A. I reckon Mr. Myers was.

"Q. Did you see him or tell him where you were going? A. No, sir.

"Q. When you went out there and were employed, or at any time during the course of your employment, did you or not receive permission to take that truck and go and get your wife, or anybody else, when you got ready? A. Well, no sir, nothing been said about it. I didn't have anything else to do there and my boss was in town or gone home, and we were supposed to get off at five-thirty. So I just seen there was nobody else to tell me to do anything and I thought I would go over there, wouldn't be gone over fifteen or twenty minutes and go back to the plant and if there was anything to be done I could do it.

"Q. When you got through with the truck, driving it for the day, what did you do with it? A. Put it in the garage.

"Q. Where is that garage? A. Back of the plant.

"Q. Do you report to anybody when you get through? A. At that time when I got through, stayed around for a minute and name to some one 'Can I go home' or say 'I am through,' or something like that.

"Q. Had you ever taken this truck before and gone to get your wife? A. Yes, sir.

"Q. Did you ever tell Mr. Welch or Mr. Myers that was what you were doing with the truck? A. No, sir.

"Q. How many times did you get that truck or any truck and go and get your wife? A. She hadn't been at work but about three weeks; I guess six or eight times, and I told my wife to call—

"Q. Don't tell what you told her. A. All right."

If that part of the testimony of Brawner which we have stated be accepted as the truth of the case, the defendant is not liable to judgment, for, when it is sought to hold the owner of an automobile liable for the negligence of the driver, under the doctrine of respondeat superior, the mere fact that the driver was in the regular employment of the defendant will not render the defendant liable. "It must be further shown that at the time of the accident the driver was on the master's business, and acting within the scope of his employment." Goodman v. Wilson, 129 Tenn., 464-467, 166 S. W., 762; King v. Smythe, 140 Tenn., 217, 221, 204 S. W., 296; Core v. Resha, 140 Tenn., 408, 412, 204 S. W., 1149; Woody v. Ball, 5 Tenn. App. R., 300.

Hence, if Brawner was using defendant's truck, at the time he injured plaintiff's intestate, for his own purpose and not for the use and benefit of his employer within the scope of his employment, the defendant is not responsible for Brawner's negligence. Lampley v. Fain, 6 Hig., 519; Yellow Cab Co. v. Bailey, 5 Tenn. App. R., 349, 354. But, upon the evidence in the case before us, could the court so declare and withdraw the case from the jury, in view of the "prima-facie evidence" arising out of the "proof of registration," by virtue of the aforesaid Act of 1923, chapter 59?

For defendant it is insisted that the presumption created by the Act of 1923, supra, "fell to the ground and disappeared" upon the introduction of the testimony of Brawner to the effect that he was using the truck on a mission of his own, and not for the use and benefit of defendant at the time the fatal injuries were inflicted on Mrs. Young, and that, as the testimony of Brawner on that subject was not contradicted by any other testimony in the record, it was the duty of the trial judge to give the jury peremptory instructions to return a verdict in favor of the defendant.

The current of the decisions of this and other jurisdictions with respect to the general subject of the consideration and effect to be given to "presumptions," when opposed by contrary evidence, may be seen from an examination of the following cases: Frank v. Wright, supra; Woody v. Ball, supra; Central of Georgia Railway Co. v. Fuller Combing Gin Co., 2 Hig., 343; Railroad v. Killingsworth, 3 Hig., 55, 66; Davis v. Temple (Miss.), 91 So. R., 689; Alabama & V. Railway Co. v. Thornhill (Miss.), 63 So. R., 674; Alabama & V. Railway Co. v. McCoy (Miss.), 63 So. R., 221; Woodward v. Chicago,

etc., Railway Co., 145 Fed. R. 577; Berry on Automobiles (3 Ed.), sec. 1061, page 995; Potts v. Pardee (N. Y.), 8 A. L. R., 785, 787; Ursch v. Heier (Mo.), 241 S. W., 439; Glassman v. Harry (Mo.), 170 S. W., 402; Rose v. Balfe, 223 N. Y., 481, 17 Neg. Comp. Cas. Ann., 721.

We shall not undertake, in this opinion, to review the cases cited from other jurisdictions. The only one of the Tennessee cases cited which deals directly with the statutes here involved is the case of Woody v. Ball, supra, and in that case it was held by the Eastern section of this court, speaking through Judge Portrum, that where "the uncontradicted facts show that the driver of an automobile was using it outside of the scope of his employment as the servant of the owner, and for the use and benefit of another, at the time an injury was inflicted for which the injured person sued the owner, the court should direct a verdict for the defendant."

Speaking with reference to the aforesaid Acts of 1921 and 1923, the court (in Woody v. Ball, supra, at pages 303-304) said.

"The policy of this law, as has been defined, was to cast the burden upon the party who was best able to prove facts, these facts being generally in the possession of the defendant and not the plaintiff. When the uncontradicted facts once show the ownership in another or that the servant was on business other than that for the master, and then by reason of the statute should the case be submitted to the jury, in order that it might exercise its caprice and find for the plaintiff when the actual facts were all in favor of the defendant? If this were true, then if a thief stole a car the owner could be held liable for injury done by the thief, or a person could without authority register a motor vehicle in the name of another and make the other responsible for his misdeeds, or masters might in all instances be held liable for the acts of the servant when they stepped aside from their duties and were acting beyond the scope of their authority. It might be said that juries could be depended upon to liberate defendants when the facts were as above stated. But it is not the province of the jury to be judge of the law; and it is now held that where the facts are undisputed, it is a question for the court to apply the law. Other reasons might be given in support of the statement that the legislature did not intend by these acts to create more than a presumption which can be overthrown by proof, and when proofs are present there is neither foundation nor room for a presumption."

It will be observed that the rule of law announced in the above quoted excerpt from Woody v. Ball, is predicated upon the assumption that "the uncontradicted facts showed that the servant was on business other than that for the master." We assume that, by this statement, the court was there dealing with a case in which (and·

intended to be understood as saying that) such fact was proved by the undisputed testimony of witnesses who were not impeached or discredited in any of the modes recognized by law. This assumption on our part is reinforced by the fact that the court (in Woody v. Ball) cites, in support of the statements above quoted, the case of Frank v. Wright, supra.

Frank v. Wright was an appeal in error by Frank from a judgment in favor of Wright in an action brought by Wright, as administrator, to recover damages because of the death of his intestate, due to injuries inflicted by the automobile of Frank while it was being driven on one of the streets of Nashville by Mills, the chauffeur of Frank. The Supreme Court found that, at the time of the accident there in question, Frank's automobile was being used under conditions resembling those which normally attended its use in the business of Frank, and thereupon held that Mills, the driver, would be ''presumed prima-facie to have been acting in the course of his employment'' as the servant of Frank. The opinion of the court then proceeds as follows:

''Did the petitioner, as defendant below, by proof adduced, rebut this prima-facie case? Frank testified that the car was in use at the time without his knowledge or authority, and that the chauffeur was on no mission for him or for any member of his family, for whose use and pleasure the automobile was kept. Mills was alone in the car at the time of the accident. The members of petitioner's family testified that none of them had sent Mills on a mission. The chauffeur was not examined; he having left the jurisdiction shortly after the injuries were inflicted. There is no proof to the point that the chauffeur was out on a private mission of his own, though Frank is shown to have had a conference with the chauffeur before he absconded and might have learned of such private mission, had this been the case.

''In this state of the proof it is insisted by the counsel of Frank that the facts did not warrant the submission of the case to the jury. It is urged that the defendant carried successfully the burden of showing that the chauffeur was not at the time acting for him.

''This position would be unassailable if the testimony of Frank had been uncontradicted or unimpeached. The respondent, plaintiff below, contends that the jury was warranted in discrediting Frank, and testimony is referred to, showing that defendant was contradicted by witnesses of plaintiff on the point of his (Frank's) having been notified of reckless driving which had been done by Mills previous to the accident in question, and by his manner of testifying when replying to cross-questions. It is further claimed that discredit was cast upon petitioner's

testimony by his refusal as witness to give the portion of the city in which there lived a young woman with whom he was intimately associated, as he admitted; plaintiff Wright's theory evidently being that the car was being driven by Mills to carry a message from Frank to her.

"Ordinarily the testimony of a witness who is not contradicted, impeached, or discredited must be accepted as true; but, if the witness relied upon to establish a given fact be discredited or impeached, that fact may not be treated as established as a matter of law or for purposes of a motion for peremptory instructions. There must, it is true, be a substantial and more than colorable claim that the witness has been discredited; but, where this may by the jury be deemed to be sufficiently shown, the trial judge does not err in submitting the case to the jury.

"We cannot follow the contention of Frank's counsel that his testimony, construable, as it was, as denying knowledge of previous reckless driving of his automobile by Mills, was evidence upon a point that was immaterial. One of the averments in plaintiff's declaration was that the chauffeur was unfit and reckless, and so known to be by Frank.

"Neither can we approve as sound the contention that the jury may not reject the uncontradicted testimony of a witness 'upon any kind of an attack that does not reach the legal requirement of testimony impeaching his veracity.'

"The word 'impeach,' in its strictly proper signification, as applied to a witness, means an attack by character evidence directed against his general credit for veracity; but another and broader meaning is conveyed by the expression—the discrediting of the witness in the other modes recognized by the law. Properly speaking, the witness in that case is discredited, and not impeached.

"As tending to discredit a witness, the jury may consider the improbability of his statements as to facts remembered or claimed not to be recalled, as compared with the ordinary nature of things, by a cross-examination, in which he may be involved in inconsistencies, his ability and willingness to speak the truth, and other criteria which may aid in the reaching of a conclusion satisfactory to the triers of facts. Richmond v. Richmond, 10 Yerg. (18 Tenn.), 345; Wilcox v. State, 3 Heisk. (50 Tenn.), 117.

"The appellate courts, in a case such as this, will not permit testimony to be discarded or disregarded arbitrarily or capriciously. The trial judge and the Court of Civil Appeals have ruled that there appear sufficient grounds of discredit to warrant a rejection by the jury of Frank's denial of his authorization of the trip in question, and we do not feel warranted

in ruling to the contrary, viewing the matter in the light of all the facts disclosed by the evidence.

"If the jury should thus discredit the testimony of Frank on the point the use the car was put to on the occasion in question, the prima-facie case of his liability for the tortious act of his chauffeur would not be destroyed, as a matter of law, and therefore the direction of a verdict in Frank's favor was properly denied."

It will be observed that, in Frank v. Wright, supra, it was held that testimony may not be disregarded arbitrarily or capriciously, and ordinarily the testimony of a witness who is not contradicted, impeached, or discredited must be accepted as true, but that if the witness relied upon to establish a given fact be impeached (by evidence directed against his general character for veracity) or discredited in any of the modes recognized by law, that fact may not be treated as established as a matter of law or for purposes of a motion for peremptory instructions.

In the instant case, there was no attempt to impeach the general character of Brawner for truth and veracity, and his testimony with respect to the purpose for which he was using defendant's truck at the time Mrs. Young was injured is not contradicted by any witness in the record. But Brawner was directly contradicted by some of plaintiff's witnesses with respect to other material facts. On the trial below, defendant did not concede that Brawner was negligent as averred in the declaration, but sought to prove that Brawner was not guilty of negligence as alleged.

Brawner testified that he was driving westward on the north side of Main street at a speed of about fifteen miles an hour; that an automobile, headed westward, was parked at the curb on the north side of the street; that as he was passing this parked car, and about six inches (or at most not over two feet) away from it, Mrs. Young stepped out from around the front end of the parked car, directly in the path of the car driven by the witness, and so near thereto that it was impossible for him to avoid the collision. Brawner also denied that he was passing or endeavoring to pass another car moving westward in front of him at the time of the accident, and he testified that after striking Mrs. Young he stopped the truck he was driving within twelve or fifteen feet of the point of the collision.

Plaintiff's witness McCarver, who, according to his testimony, was qualified to speak concerning the matters to which he testified, stated that Brawner was driving at a speed of thirty-five to forty miles an hour, and that he was in, or practically in, the center of the street at the time of the collision; that Brawner had changed the course of his car, and was over near the middle of the street, in order to pass another car going in the same direction. McCarver contradicted Brawner's testimony that Mrs. Young stepped out from the

protection of a car parked at the curb, and in that way stepped immediately in front of Brawner's car.

Plaintiff's witness, Mrs. Strother testified that she was driving westward on Main street in an automobile and saw Brawner start from the American Dry Cleaning Company's plant; that Brawner drove across the street and turned west immediately in front of her; that she was driving at a speed of about twenty-five miles an hour, and, at that speed was not able to keep up with Brawner's car down to the place where the collision occurred.

Several of plaintiff's witnesses testified that the car which struck Mrs. Young ran a distance of from fifty to seventy-five feet after the collision before it stopped.

Thus it appears that the testimony of Brawner concerning some of the material and vital issues in the case was directly contradicted by witnesses for the plaintiff. Under rules well-nigh elementary in Tennessee, it was for the jury to reconcile the testimony of all the witnesses if it could do so, and if it could not, then to accept that which it believed to be true and reject that which it believed to be untrue. If, in this process of sifting the testimony and the witnesses, the jury found that Brawner had testified falsely about material facts as to which he was contradicted by other witnesses, it was within the province of the jury to reject testimony of Brawner which was not directly contradicted by the testimony of other witnesses. This is merely an application of the ancient maxim, falsus in uno falsus in omnibus.

Discussing the rule embodied in this maxim it is said in 6 Jones on Evidence (2 Ed.), sec. 2473, page 4897, that

"It is within the discretion of the jury wholly to reject the testimony of a witness whom they believe to have testified falsely in some particulars, or to accept some of his statements and to reject others. The true rule is that the credibility of a witness, who knowingly testified falsely as to one or more material facts, is wholly a matter for the jury. They may believe or disbelieve his testimony as to other facts according as they deem it worthy or unworthy of belief."

See also, on this subject, 28 R. C. L., pages 659-661, sections 244-245.

An illustration of the principle thus stated is found in 1 Moore on Facts, sec. 551, as follows:

"It is a presumption—sometimes called a presumption of law, but generally one of fact, founded in common experience of the regularity and certainty with which the mail is carried and delivered—that a letter properly addressed and deposited in the postoffice with postage prepaid reached its destination by due course of mail. If there is no evidence to the contrary, it is the duty of the court or jury to find that the letter was received.

. . . In most cases the addressee's non-recollection of receipt of the letter would not diminish the weight of the presumption. The presumption may be overcome by the denial of the addressee if his credibility is good and his memory can be trusted. But if confidence cannot be reposed in his oath, as, for example, where other parts of his testimony have been proved to be wilfully false, his denial will not avail."

For the reasons stated, we are of the opinion that the trial court did not err in overruling defendant's motion for peremptory instructions, and the first assignment of error is overruled.

The second assignment is that the trial court erred in excluding the following testimony of the defendant:

"Q. Did you give this driver of the truck permission to take the truck to McEwen's Laundry to meet his wife? A. No sir."

The defendant was called and examined as a witness for the plaintiff, and on his cross-examination by his own counsel the above quoted question was asked and answer given, whereupon the following occurred:

"Objection by plaintiff.

"Mr. Walker: I want to except to his statement of what he was told, on the ground that it is hearsay. Now, as to whether he gave the driver permission to go to the North Pole, or wherever he was going, at this time, I object to it.

"The Court: I doubt its competency at this time. Of course, you would have a right to put him back on the stand, but the testimony has been excluded because incompetent.

"Exception for defendant."

It does not appear that thereafter the defendant offered to go "back on the stand" or that his counsel asked leave to recall him, for which reason, we think, he waived his exception to the exclusion of the testimony.

But aside from this, the testimony was not of any particular materiality. The controlling question (aside from the inquiry as to the negligence or lack of negligence on the part of the driver of defendant's truck) was, whether the driver was acting within the scope of his employment, and the question of whether or not the defendant gave Brawner permission to take his wife home in defendant's truck was not a determinative one. Core v. Resha, supra, page 412; Fisher v. Fletcher (Ind.), 22 A. L. R., 1392, and note pages 1397, 1400.

It was because of this rule that the Act of 1921, chapter 162, was amended by the Act of 1923, chapter 59.

The second assignment of error is overruled. It results that the judgment of the circuit court is affirmed, and judgment will be entered here in favor of the plaintiff administrator and against the defendant Welch for $5,000, with interest thereon from the date of

the judgment below, and for the costs of the cause accrued in the circuit court. The costs of the appeal will be adjudged against defendant Welch and the sureties on his appeal bond.

Crownover and DeWitt, JJ., concur.