GREEN v. POWELL.—124 S. W. (2d), 269.

Eastern Section.   November 3, 1938.

Petition for Certiorari Denied by Supreme Court, February 4, 1939.

Raulston & Raulston, of Jasper, for plaintiff in error.

Tom Kelly, of Jasper, and Williams & Williams, of Chattanooga, for defendant in error.

McAMIS, J.   J. R. Green, alias Dutch Eggert, has appealed in error to this court from a judgment based upon a jury verdict in the sum of $4,000 in favor of Mrs. Alice Powell who sustained personal injuries when Green's car, driven by one Gurney Lofty, collided with the automobile in which she was riding.

Lofty was a defendant below but has not appealed.   It is now conceded that there is material evidence to support the finding of the

jury that the Green car was being negligently operated at the time of the collision and that the driver's negligence was the proximate cause of Mrs. Powell's injuries. It is insisted, however, there is no evidence to support a finding that on October 11, 1937, the date of the collision, the driver was in Green's employ and at the time engaged upon a mission for him.

Several of the assignments draw in question the conclusions of the circuit judge in overruling the motion for a new trial. A purported transcript of these comments appear within the transcript though neither incorporated within the bill of exceptions nor entered upon the minutes. This document does not appear to have been filed by the clerk and hence cannot be considered as a separate part of the bill of exceptions though appearing to bear the authenticating signature of the trial judge. The motion to strike the pages of the transcript upon which these remarks appear must, therefore, be sustained.

We shall not attempt to discuss each assignment separately but proceed at once to a consideration of whether the court erred in submitting to the jury the issue of the alleged agency relationship between Green and Lofty. It was shown that the car driven by Lofty was registered in Green's name, giving rise to the statutory presumption that, at the time of the collision, it was being operated with Green's consent, proof of registration being prima facie evidence that it was being operated by his agent within the course and scope of his employment. Code, Sec. 2702. It is insisted by defendant, however, that this presumption vanishes when it is made to appear by uncontradicted proof that the car was, in fact, not being operated by the owner's servant or agent within the course and scope of his employment and that in such case upon motion for a directed verdict the question becomes one of law for the court to determine. The case of Woody v. Ball, 5 Tenn. App., 300, 302, is relied upon to support defendant's insistence that the court erred in submitting this issue to the jury.

It was held in that case that proof of registration did not constitute substantive evidence of the agency relationship and that the jury is not warranted in determining that issue in favor of plaintiff where the uncontradicted proof shows that no such relationship existed at the time the alleged tort was committed. On the other hand, it is insisted by plaintiff in this case that the jury could properly base its finding upon proof of registration alone because all of the witnesses introduced by defendant were impeached and discredited and their testimony contradicted by the testimony of plaintiff's witnesses.

While, as held in Woody v. Ball, supra, the jury cannot arbitrarily or capriciously disregard the testimony of credible witnesses introduced for the purpose of obviating the effect of the stat-

ute, we are of opinion the effect of proof of registration is not far overcome as to require the court to take-the question from the jury by testimony, no matter how incredible, that the car at the time of the collision was being operated without the owner's consent and upon a private mission of the driver.

In Frank v. Wright, 140 Tenn., 535, 205 S. W., 434, 436, the issue was whether or not Frank, the owner, was liable for the tortious act of his chauffeur and whether the court should have directed a verdict in favor of the owner, the uncontradicted testimony of discredited and impeached witnesses showing the use of the car on the occasion in question, and the court said:

"If the jury should thus discredit the testimony of Frank on the point the use of the car was put to on the occasion in question, the prima facie case of his liability for the tortious act of his chauffeur would not be destroyed, as a matter of law, and therefore the direction of a verdict in Frank's favor was properly denied."

In the instant case we think the question of agency was properly submitted to the jury. It was shown, without objection, that defendant operated a business located a few miles from where the collision occurred where, by reputation, he had for many years been engaged in the liquor business. Upon this point it is also shown that defendant has been several times convicted of handling liquor, both in the Federal and State courts, and only a few months following the time in question was caught loading ten gallons of liquor and his car confiscated. It is shown that liquor has been bought at his place of business. It is the theory and insistence of plaintiff that Lofty was in the general employ of defendant around his place of business and on the occasion in question had taken defendant's car for the purpose of purchasing and transporting whiskey for defendant which he was in the act of doing when the collision occurred.

We have no difficulty in concluding that Lofty was engaged in transporting liquor in defendant's automobile at the time of the collision. Within a short time after the collision he drove the car a short distance and stopped in front of the home of Mr. Woods where he removed from the compartment in the rear of the car something in a tow sack. After depositing the tow sack in the smoke house of the Woods home he drove back to the scene of the accident. Lofty's explanation of his trip to the Woods home is that he was in search of a crowbar to straighten a fender of the Green car. He denied carrying a sack into the smokehouse, though this is clearly shown by a number of other witnesses. Obviously, the jury rejected Lofty's story in this connection and gave credence to plaintiff's witnesses. No reason is suggested why he would have driven the Green car in its disabled condition to the Woods home for the purpose of removing something in a tow sack and, to say the least of it, the jury was clearly

warranted in finding the the sack contained contraband. To believe otherwise would be contrary to common experience but in addition to this it is shown that both Lofty and his companion Gott were intoxicated and that an empty bottle was found in the Green car. All of this was denied by Lofty and Gott and thus they are contradicted upon a material issue.

Lofty's explanation of his mission in making this trip with Green's car is not convincing and does not reconcile with the fact that he was transporting liquor in a tow sack concealed in the rear compartment of the car. According to the proof Green had returned from Florida in this same car only a few hours before it was taken on this trip by Lofty. According to Lofty he had not seen Green or the car for a week before this time. If we accept this as true, he could not have known of the presence of the tow sack in the rear of the car unless he put it there on this trip.

The proof shows that Lofty for some time prior to the date in question spent much of his time in and around the Green place; that he frequently drove this car to the store and depot, presumably for the Greens, and that he had no other visible means of support. He testified that he went to the Green place of business about six o'clock on the morning of the collision and found the Green car parked in front of the house with the key in it. He says he then drove the car, without the knowledge or consent of either Green or his wife, to a store about two hundred yards away to get some cigarettes, thinking it would be all right with the Greens to use the car for this purpose.

He testified that when he got to the store he met a colored acquaintance by the name of Frank Gott who gave him fifty cents to take him to the home of Ralph Pryor located in the vicinity of the collision. He says Gott's purpose in making this trip was to purchase a dog from Pryor. When they reached the Pryor home they found Pryor away but, notwithstanding they had gone a considerable distance to see him, they made no effort to find him except to go to the home of Will King where they were told he had gone. There is a conflict in the testimony of Gott and Pryor as to whether the former went to see the dog after the date of the collision. Both agree that the dog was never purchased by Gott.

Both Green and his wife testified that Lofty took the car on the occasion in question without their knowledge or consent. However, neither appear to have been surprised when they went to the front of the house and found the car gone. Green, upon learning of the accident, went to the scene of the collision and, instead of remonstrating with Lofty over the unauthorized use of his car, directed him to drive it back to his place of business. All of these circumstances cast in doubt the testimony of defendant and his wife that the use

of the car by Lofty was unauthorized and it was for the jury to say whether, in view of these contradictions and the unreasonable and improbable testimony of defendant's witnesses and especially the impeachment of defendant by prior convictions and the character of business he was operating, the statutory presumption had been overcome.

However, aside from this, we think there is positive evidence connecting defendant with the liquor removed by Lofty to the Woods' smokehouse. After conversing with Lofty and directing him to drive the wrecked car in, defendant followed in another car and stopped, according to his own testimony, at the Woods home. It is shown that the Woods family was not at home and defendant could have had but one purpose in stopping there, namely, either to further conceal the contraband placed there by Lofty or remove it to a place of greater safety. To arrive at this conclusion it is not necessary to base an inference upon an inference. That defendant stopped at the Woods home is shown by positive testimony and it remained only for the jury to infer from all the facts and circumstances the purpose of his doing so.

There is no complaint with respect to the court's charge to the jury or the admission or exclusion of evidence. We think the case was properly submitted to the jury and that there is material evidence to support the verdict of the jury. It results that all of the assignments of error are overruled and the judgment below affirmed with costs.

Portrum and Ailor, JJ., concur.