GLADYS H. HAGGARD, Petitioner,

*v.*

JIM CLAYTON MOTORS, INC., et al., Respondents.

NAN M. LEWIS, Petitioner,

*v.*

JIM CLAYTON MOTORS, INC., et al., Respondents.

393 S.W.2d 292.

(*Knoxville,* September Term, 1964.)

Opinion filed August 16, 1965.

Claude K. Robertson, Robert L. Crossley, Fowler,
Rowntree & Fowler, Knoxville, for petitioners.

THOMAS W. THOMSON, Knoxville, for Jim Clayton Motors, Inc.

WALLACE F. BURROUGHS, Knoxville, for H. Scott Boyer, Jr.

MR. JUSTICE WHITE delivered the opinion of the Court.

These are companion suits filed in the Circuit Court for Knox County by Gladys H. Haggard and Nan M. Lewis, petitioners here, to recover from Jim Clayton Motors, Inc., and H. Scott Boyer, Jr., respondents here, damages sustained when Mrs. Haggard's automobile, in which Nan M. Lewis was riding as a passenger, was involved in a collision with a Renault automobile owned by Clayton Motors and driven at the time of the accident by one Howard Norman Daniel.

The defendant Boyer, respondent here, was a delinquent bill collector for defendant Clayton Motors, Inc. and other motor companies in the vicinity. Norman Daniel and Billy McCoy, two of Boyer's friends, occasionally helped him make collections.

The plaintiffs, petitioners here, charge in their declaration that the accident proximately resulted from the combined negligence of (1) Daniel in the operation of the vehicle; (2) the defendant Boyer, as the alleged agent of Clayton Motors, Inc., in entrusting the automobile to Daniel and McCoy with knowledge that neither of the two men were qualified operators of motor vehicles; and (3) the defendant Clayton Motors, Inc. in entrusting the automobile to Boyer with knowledge that he was not a qualified operator of a motor vehicle, was addicted to drink, associated with persons of dissolute character, and habitually permitted such persons to drive automobiles in his possession.

In the trial court the defendants filed special pleas, the substance of which was to deny that Boyer was an agent of the defendant Motor Company; to deny all allegations of negligence on their part; and to deny the giving of possession of the automobile to Daniel and McCoy. In addition thereto, the defendants asserted that the Renault automobile had been stolen from Boyer on the night of the accident.

Daniel, who is in prison, was not made a defendant and did not testify. The case was heard by the judge and jury and the verdict of the jury for Mrs. Haggard in the amount of $3,000.00, and in favor of Miss Nan M. Lewis in the amount of $7,000.00, against both defendants, was returned by the jury and was approved by the judge, and a money judgment rendered thereon in said amount. Upon their motion for a new trial being overruled, they appealed to the Court of Appeals and assigned error. In that court it was held that the trial judge should have directed verdicts for both defendants at the close of all

of the proof. The cases were accordingly reversed and dismissed.

A petition for the writ of certiorari was filed by Mrs. Haggard and Miss Lewis in this Court, insisting that the Court of Appeals, among other things, erred in holding that the statutory presumption arising from proof of Clayton Motors, Inc. ownership of the car, under T.C.A. sec. 59-1037, was displaced as a matter of law when evidence to the contrary was introduced.

Specifically, it is petitioners' insistence that such proof of non-agency must come from witnesses whose credibility is not in issue, and who are not contradicted; but that in this case the only such proof comes from the defendants Clayton Motors and Boyer, and McCoy, who is an admitted criminal.

■ It was undisputed that defendant Clayton owned the automobile which was involved in the collision, and for the purposes of this petition, we must assume that the injuries sued for were caused by the negligence of the driver, Daniel. Upon proof of these facts, without more, there arose under our statute (T.C.A. sec. 59-1037), as amended, a prima facie case of presumption that the automobile was being operated by the owner or by his servant in his service. *Sadler v. Draper,* 46 Tenn.App. 1, 19, 326 S.W.2d 148 (1959).

■ The rule in this State, where evidence is offered in rebuttal to the presumption created by T.C.A. secs. 59-1037, 1038, is that uncontradicted and unimpeached evidence causes the presumption to disappear. *Hill v. Harrill,* 203 Tenn. 123, 133, 310 S.W.2d 169 (1957); *Bell Cab & U-Drive-It Co. v. Sloan,* 193 Tenn. 352, 356, 246 S.W.2d 41 (1951); *Long v. Tomlin,* 22 Tenn.App. 607,

619, 125 S.W.2d 171 (1938); *Woody v. Ball*, 5 Tenn.App. 300, 304 (1927).

However, when the witness offering the evidence in rebuttal of the presumption is contradicted as to material matters, his credibility is a matter for the jury, which determines whether his evidence overcame the presumption. *Jones v. Agnew*, 197 Tenn. 499, 502, 274 S.W.2d 825 (1954); *Smith v. Phillips*, 43 Tenn.App. 364, 309 S.W.2d 382 (1956); *McConnell v. Jones*, 33 Tenn.App. 14, 228 S.W.2d 117 (1949); *McParland v. Pruitt*, 39 Tenn.App. 399, 284 W.S.2d 299 (1955); *Sadler v. Draper*, supra; *McAmis v. Carlisle*, 42 Tenn.App. 195, 300 S.W.2d 59 (1956); *Green v. Powell*, 22 Tenn.App. 481, 124 S.W.2d 269 (1938); *Wright v. Bridges*, 16 Tenn.App. 576, 65 S.W. 2d 265 (1933); *Williams v. Bass*, 8 Tenn.App. 482 (1928).

This means that, before a trial judge may take the question from the jury, the evidence must be such that it can be said, as a matter of law, that there was no agency.

In *Phillips-Buttorff Mfg. Co. v. McAlexander*, 15 Tenn. App. 618 (1932), the court said:

> The testimony of Mr. Binns [agent for employer] and defendant McQueen [employee], with reference to the agreement under which the Ford coupe was purchased and the manner of its use after its purchase, is undisputed, and there was no attempt to impeach the general character of either of said witnesses in any respect. McQueen was contradicted by some of plaintiff's witnesses with respect to certain other material facts; and if the contention of defendant Phillips-Buttorff Mfg. Co. that McQueen was not engaged in its business at the time of the accident, had depended solely on McQueen's testimony, his credibility would have been a

matter for the jury to determine. *Welch v. Young,* 11 Tenn.App. 431, 441.

But the testimony of D. W. Binns is not contradicted in any particular, and he fully corroborates the testimony of McQueen touching the agreement under which the Ford coupe was bought and kept, and the manner of its use. *Testimony may not be disregarded arbitrarily or capriciously; and the testimony of a witness who is not discredited in any of the modes recognized by law, must be accepted as true. Frank v. Wright,* supra [140 Tenn. 535], p. 543 [205 S.W. 434]; *Welch v. Young,* supra, [11 Tenn.App. 431], p. 440. 15 Tenn.App. at 626-627.

The motion of defendant Phillips-Buttorff Mfg. Co. for a directed verdict in its favor should have been sustained * * *. 15 Tenn.App. at 628.

Once the witness is impeached on any material point, then the trial court may not hold as a matter of law that the statutory presumption has disappeared and direct a verdict. The Court, in *Welch v. Young,* 11 Tenn.App. 431 (1930), explained:

* * * ordinarily the testimony of a witness who is not contradicted, impeached, or discredited must be accepted as true, but that if the witness relied upon to establish a given fact be impeached [by evidence directed against his general character for veracity] or discredited in any of the modes recognized by law, that fact may not be treated as established as a matter of law or for purposes of a motion for peremptory instructions. 11 Tenn.App. at 440.

If, in this process of sifting the testimony and the witnesses, the jury found that Brawner had testified

falsely about material facts as to which he was contradicted by other witnesses, it was within the province of the jury to reject testimony of Brawner which was not directly contradicted by the testimony of other witnesses. This is merely an application of the ancient maxim, falsus in uno falsus in omnibus. 11 Tenn.App. at 441.

Judge Anderson, after holding in *Southern Motors, Inc. v. Morton,* 25 Tenn.App. 204, 154 S.W.2d 801 (1941), that the statutory presumption had disappeared, explained the effect of the presumption:

Now, we do not intend to imply that even where a witness giving testimony opposed to the statutory presumption is impeached or otherwise subjected to a discrediting attack, this presumption remains in the case in the sense that it is to be weighed by the jury along with the evidence in determining wherein lies the preponderance with respect to the issue involved; for we do not believe that to be true. Upon the other hand, the fact that the rebutting evidence comes from impeached or challenged sources otherwise assailed merely prevents the destruction of the presumption, permitting it to operate in the sense that by reason thereof the judge cannot take the question from the jury, thus leaving it to that body to pass upon the credibility of the witnesses under fire by giving to their testimony the weight they think it is entitled to or rejecting it altogether, just as they see fit and proper; but the point is, that in doing this they are not to consider or be influenced by the presumption. If the challenged testimony be rejected by the jury, then upon the strength of the presumption the finding on that question ought to be for the plaintiff; for the

rejection of the testimony would leave no counter-evidence in the case: conversely, if the testimony be accepted notwithstanding the attack upon its source, the finding ought to be for the defendant; for such acceptance validates the testimony so that it destroys the presumption and renders it unavailable for weighing against the counter-evidence or for any purpose. 25 Tenn.App. at 214, 154 S.W.2d at 807.

The Court of Appeals correctly stated that the evidence necessary to rebut the presumption must be "uncontradicted and come from witnesses whose credibility is not in issue." However, the court, in applying the rule, characterizes the testimony of Clayton as "unimpeached and uncontradicted," and, therefore, held that the presumption "vanished into thin air," and that the trial court should have directed a verdict in Clayton's favor.

█ Conceding that the only evidence offered was that Daniel was on a lark of his own and not on any business of Clayton, still, under the circumstances of this case, it would have been improper for the trial judge to have directed a verdict.

Both Clayton and Boyer were involved in discrepancies. Clayton testified that Boyer was not an employee, that Boyer "had done less than maybe one, two, or three little collections that he brought in, one or two items of payment, and maybe he repossessed one car, possibly. He then admitted that Boyer had discretion to either repossess or just collect the debt without repossession, and his business records were introduced showing that he gave cash advances to Boyer repeatedly, not just a few times.

Boyer admitted that Clayton paid him substantial sums and that Clayton "was paying me rather well for

what I was doing," and that Clayton was his "biggest customer." The witness McCoy testified that he often went with Boyer to make repossessions, and went because he was paid to go.

Clayton testified that the automobile was turned over to a Mr. Arthur Thomas and Boyer, and that Thomas was to repair the car. He also testified that Thomas was better qualified to work on the Ferlic clutch than any of Clayton's employees. The witness Thomas testified that the car was not turned over to him, that Boyer brought the car by his home, and he looked at the car as a favor to Boyer, and that the only time he discussed the matter with Clayton was afterwards when Clayton asked him what was wrong with the clutch, and Thomas told him that nothing was wrong with it. He also testified that he did not charge for his services, but that he only did such work as a hobby, and that he only had a general idea what a Ferlic clutch is.

Clayton was very evasive as to the amount of time that the car was in Boyer's possession, saying it could have been one week and it could have been four weeks. Yet Boyer testified that the length of time was ninety days, and that Clayton was "mistaken."

All of these contradictions were directly connected to the issue of agency. It is unnecessary to delve further into the record to see that the answers of these two witnesses were evasive and contradictory. However, one further example is sufficient to show their demeanor before the jury. Clayton testified that in 1960, six mechanics comprised his service staff, and that none were qualified to work on the clutch. He then admitted on cross-examination that he had advertised that seventeen trained mechanics were employed:

Q. What that misrepresentation, Mr. Clayton?

A. No audible answer.

Q. Was it?

A. At least it was a little optimistic.

After being impeached in this manner, it is not difficult to see how the jury could have disbelieved this witness.

■■■ The fact that the witness McCoy, who testified for plaintiff, stated that he and Daniel borrowed the car from Boyer to go to a dance at Maryville, Tennessee, did not destroy the statutory presumption. Although a party may not attack the credibility of his own witness, he is not bound by the witness' testimony:

"Nor is it correct to say that a party 'vouches for the credibility' of a witness he introduces. While it is a rule that a party cannot impeach his own witness, as by proving his bad character, etc., he is not bound by the witness' testimony or precluded from showing it to be untrue. 1 Morgan, Basic Problems of Evidence (1954) 63, 64; *Hewgley v. General Motors Acceptance Corp.*, 39 Tenn.App. 553, 559, 286 S.W.2d 355." *Sadler v. Draper,* 46 Tenn.App. 1, 27, 326 S.W.2d 148, 160.

"As pointed out in our former opinion, all the witnesses, including the driver Crenshaw, who testified as to the circumstances under which he was using the car, were contradicted or impeached by cross-examination so as to involve their credibility and leave it for the jury to say what part of their testimony should be accepted and what part rejected, and to find in accord with the statutory presumption." 46 Tenn.App. at 27, 326 S.W.2d at 160.

The witness McCoy was a convicted forger and murderer, and had been declared infamous by the Knox County Criminal Court. An authenticated copy of the record containing a judgment declaring him infamous was introduced by defendants' counsel for the apparent purpose of casting a reflection upon his credibility as a witness pursuant to T.C.A. sec. 40-2712. The witness, therefore, was impeached by a "mode recognized by law." *Welch v. Young*, 11 Tenn.App. 440, and the Court could not take the matter of his credibility from the jury.

Accordingly, the Court of Appeals was in error in holding that the trial court should have directed verdicts, and the cases were properly submitted to the jury. For these reasons the judgments of the Court of Appeals are reversed and those of the trial court reinstated. An order will be entered accordingly.

BURNETT, CHIEF JUSTICE, and DYER and CHATTIN, JUSTICES, concur.