SOUTHERN MOTORS, Inc. v. MORTON.—154 S. W. (2d) 801.

Western Section.   March 21, 1941.

Petition for Certiorari denied by Supreme Court, June 28, 1941.

Charles L. Neely, of Memphis, for plaintiff in error.
W. Wright Mitchell, of Memphis, for defendant in error.

ANDERSON, J.   This action was instituted by the original plaintiff, Katherine Morton, to recover damages for personal injuries sustained by her when the automobile in which she was riding as a guest was run into by another automobile owned by the defendant, Southern Motors Inc., and being driven at the time by one D. L. Cianciola, the latter also being named as a defendant.   There was a verdict and judgment for the plaintiff against both defendants in the sum of $1,200.   The defendant corporation alone appealed in error.   It contends that, notwithstanding the conceded negligence of the driver of the car, there was no evidence to support the con-

clusion that at the time of the accident he sustained such a relationship to it as rendered it responsible for his conduct, and hence that its motion for a directed verdict should have been sustained.

The accident occurred on Sunday afternoon. As stated, the negligent driver, D. L. Cianciola, was operating a car belonging to the defendant corporation. His wife and other members of his family were also occupants of the car. The theory of the Motor Company's defense was that its car had been loaned to Cianciola for use by him on that particular day and that at the time the accident occurred he was using the loaned car on a mission that was exclusively his own.

The theory put forward by the plaintiff in support of her contention that the judgment should be affirmed is stated in the brief in this language:

"We submit that the preponderance and greater weight of the evidence clearly establishes the three vital points here upon which the jury were entitled to predicate their verdict in favor of the plaintiff against the Southern Motors, Inc. These facts are namely:

"(1) That at the time and place of the accident, Mrs. D. L. Cianciolo alone was interested in buying the new automobile from the Southern Motors, Inc., and not her husband, D. L. Cianciolo.

"(2) That the LaSalle automobile in which Cianciolo was riding his wife, the purchaser, Mrs. Cianciolo, at the time of the accident was not loaned to her but rather to him, D. L. Cianciolo, and

"(3) That the time of the accident, Mr. Cianciolo to whom the automobile was entrusted and loaned was demonstrating the automobile to his wife, the prospective purchaser, and that was the purpose of the loan to him—to act as an agent for the Southern Motors and demonstrate their automobile to one of her prospective purchasers."

Learned counsel for the plaintiff makes a very able and ingenious argument in support of his insistence that we ought to affirm the judgment. But this must not be done; for, even if it be assumed that any view of the plaintiff's theory as above set forth furnishes a legalistic basis for the verdict and the judgment, there is no material evidence to support the conclusion necessarily reached with respect to the essential facts bearing upon the crucial question of the relation of the negligent driver to the defendant.

We shall now undertake to give the considerations which have led us to this conclusion.

The plaintiff concedes that apart from the effect of the procedural statute hereinafter discussed the authorities are all against her and she should not have prevailed, if the only permissible conclusion was that Cianciola and not his wife was the purchaser or prospective purchaser of the new car; and hence, for the moment, we address ourselves primarily to that point as we

proceed to examine the evidence. We do this in the light most favorable to the plaintiff as required by an elementary rule of practice governing the consideration of the question in hand.

The defendant is a corporation engaged in the sale of Cadillac and LaSalle automobiles. Cianciola was one of its customers, having bought several cars from it prior to the occasion here under consideration. For some time prior to February, 1939, Mr. Guerini, one of the defendant's salesmen, had been endeavoring to prevail upon Cianciola to buy a new car. On Sunday, February 26, 1939, Cianciola, accompanied by his wife, went to the defendant's place of business and selected the type of car desired. The defendant did not have in stock one of the color preferred by the wife. The trade was agreed upon, however, at that time, with the understanding that a car of the type and color desired would be ordered and delivered at a later date. The agreement was reduced to writing in the form of an order signed by Cianciola but not by his wife. Cianciola's old car was taken in at an agreed figure and that amount was allowed as a credit on the purchase price of the new one.

At the same time the salesman let Cianciola have one of the company's cars to use that day with the understanding that it was to be returned the following morning. As already said, the accident occurred on that afternoon while Cianciola was driving his family in the defendant's car.

We should say just here that it also seems to be a theory of the plaintiff that even if the purchase had been agreed upon before the accident, that nevertheless, in order to forestall a rescission of the trade or at least an attempt to rescind, and to insure acceptance of the purchased car upon its arrival, it was necessary to demonstrate to the satisfaction of Mrs. Cianciola the operating qualities of the type of car that had been selected, and that Cianciola acting for the defendant dealer was engaged in this undertaking at the time the accident happened.

The plaintiff relies chiefly upon the testimony of Cianciola to support her contentions and it is quite evident that even though a defendant he did not view with alarm the menace of plaintiff's action and in fact was seemingly not at all averse to the way the case went. In this connection it is worthwhile to note that he filed separate pleas to the declaration and was represented by separate counsel throughout the trial. We have concluded that his testimony upon the determinative question does not arise to the dignity of evidence, and this we shall now demonstrate.

On direct examination by his own counsel he testified that after they went to the defendant's place of business his wife "picked out the car she thought she liked and they didn't have the right kind she wanted. But she signed up for a car all right."

(The evidence shows that she did not sign anything. Upon the other hand, all of the signing that was done was done by Cianciola alone and this is conceded.)

He also testified on direct examination that the defendant's salesman, referring to one of the defendant's cars, asked him to "drive it out and see how I like it," and "to bring it back the next morning."

Asked, "Why did he want you to take that car he loaned you?" Cianciola responded, "To see how I liked it, and how much gas it used and to see if I am satisfied with it."

On cross-examination by the Motor Company's counsel, Cianciola was interrogated with respect to his testimony on a former trial. He admitted having testified that it was he who bought the new car; that "I signed up that same morning;" that after the purchase had been completed the dealer, not having in stock one of the desired color, had let him have a car of the same type as that purchased to drive "on that Sunday afternoon to see how I liked it," with the understanding that he was to return it the following morning.

He then said that the foregoing version of the facts given by him on the former trial was correct.

When he was turned over to the plaintiff's counsel for cross-examination, he testified easily and without equivocation that it was his wife, not he, who was the prospective purchaser and who in fact bought the new car. He was emphatic on that point, although when asked, "She was the one who owned the old car you left at that place?," referring to the one that was traded in, his response was, "I couldn't answer that. I am not sure."

He was also asked, "She had signed up for the new car?" referring to his wife. His response was, "Yes," whereas, as already stated, she in fact signed nothing then and signed nothing thereafter. He further testified that the dealer's car was turned over to him in order that he might demonstrate it to his wife on that Sunday afternoon, evidently meaning that this was to be done with a view of satisfying her as to the advisability of its purchase.

We may observe incidentally that it developed that Mrs. Cianciola had no resources whatever with which to pay for an automobile; nor did she testify in the case, it appearing that she had been advised by her physician "not to be in Court."

There was introduced in evidence the written order for the new car. This is dated as of the day the sale was made and describes the buyer as being "D. L. Cianciola" and is signed by him alone. When the new car arrived on or about March 20, 1939, a conditional sales contract was entered into, which is in the record. This describes the purchaser as "Dominick Cianciola" and is signed by him in that capacity and by the defendant Motor Company in the capacity of seller. There is no reference to Mrs. Cianciola in this instrument; and there was no denial by Cianciola that he executed it.

Without further specific reference thereto it is clear to us that at one stage of his examination the tenor and effect of Cianciola's testimony was that his wife, and not he was the purchaser or prospective purchaser of the car who had to be satisfied by a demonstration if delivery of the new car was to be accepted and that at another stage he testified directly to the contrary, that is, that he himself was the purchaser and that the car involved in the accident had merely been loaned to him in order that he might "try it out" to see whether he was satisfied with his new purchase.

The contradiction was very flat and wholly unexplained: It, therefore, did not go merely to the weight to be given the witness' testimony but robbed it of its substance so that with respect to that issue it cannot be properly treated as any evidence; for who can say truly and also with reason that he was right one time and wrong the other? De Grafenreid v. Nashville Ry. & L. Co., 162 Tenn., 558, 39 S. W. (2d), 274, and cases cited; See, also, Hatch v. Brinkley, 169 Tenn., 17, 26, 80 S. W. (2d), 838.

Guerini, the salesman, who was the only other witness having personal knowledge of the transaction, testified that the Motor Company did not have in stock a car of the color that Cianciola decided on; that the purchase was completed with the understanding that a vehicle of the type and color desired would be ordered and delivered later; that nevertheless Cianciola wanted to "try the car," so "I said, 'There is a car sitting right there, sitting in the driveway. Go on and take that automobile and try it. I would like for you to learn something about it.' So I got in and showed him the gear shift and all, and told him it was a standard shift, like any other car only it had been put down under the steering wheel, which is a fact."

He further testified without objection that it was the custom to lend a car to prospective purchasers among the defendant's regular patrons when they stood in need of one and also with respect to previous sales to Cianciola, that "he wouldn't buy until Mrs. Cianciola would come down with him;" that "she always picked the car out" and did upon the occasion here under consideration; also, that after the deal had been closed he insisted that Cianciola and his wife take one of the defendant's cars and ·"drive it that Sunday afternoon;" that "I told them to try anything they wanted;" and "to learn how to operate the new gear shift" in the use of which he had instructed them.

Upon its arrival at a later date the new car appears to have been registered in the name of Mrs. Cianciola. This was after the accident and, for reasons too obvious to mention, determinative significance cannot be given that fact.

We have stated the substance of all the material testimony upon the determinative point and, as already indicated, we think

it furnishes no basis for the conclusion that the real purchaser of the car was Mrs. Cianciola and that her husband, acting as the representative of the defendant, was merely demonstrating it to her.

So it is, we say, that the only permissible view was that Cianciola and not his wife was the purchaser of the car. This being true, even if it be considered that at the time of the accident Cianciola was demonstrating the car to his wife with a view of satisfying her with respect to the purchase that had been made, yet that fact would not render the defendant liable for his negligent conduct.

The Alabama case of Cruse-Crawford Mfg. Co. v. Rucker, 220 Ala., 101, 123 So. 897, 898, involving a parallel state of facts, supports this view:

In that case, a salesman of the defendant had been demonstrating a car to one Walker as a prospective purchaser. At the conclusion of the demonstration, he gave Walker permission to drive the car to his home to exhibit it to his wife, Walker having stated that he "wanted to talk to his wife about it before he decided." It was also shown that Walker had said that he "wouldn't take the car until his wife saw it." The salesman testified that "I told him to take it out and show it to his wife, ride in it and when he got through to come back." While Walker was driving the car under this arrangement an accident occurred and the suit resulted.

The plaintiff invoked the doctrine that one demonstrating a car for a dealer for the purpose of trying to effect a sale, is the agent of the dealer in so doing and the latter is responsible for the demonstrator's negligent conduct while so engaged. Responding to this contention, the Court reasoned in a manner that furnishes so complete an answer to one phase of the plaintiff's contention in the present case that we quote it:

"If we give full effect to the principles so asserted, we cannot agree with appellee that they are sufficient to sustain a finding of liability on the facts of this case. We do not think that the jury was justified in finding that the prospective purchaser was representing defendant in exhibiting the car to his wife if he was so engaged at the time of the collision. It was he and not his wife who was the prospective purchaser. That he was exhibiting (demonstrating, if the word suits better) the car to his wife, the only proper inference we think is that it was only for the purpose of determining whether he would purchase it. The fact that his wife should approve or disapprove the purchase was doubtless, as it usually is, one of the deciding factors controlling his decision; but its only office was personal to himself. The same principle of law would apply if the car had been intrusted to him to exhibit to a mechanic of his choice to advise as to its mechanical condition. In neither event do we think is he representing the seller in so doing, when it is only to satisfy himself as to whether he wishes to make the purchase."

It is proper to say that we think the facts in the record before us show a stronger case in favor of the defendant than that just quoted from, or any other that we have examined. The difference lies in the fact that in the instant case the accident occurred after the purchase had been agreed upon and not during a demonstration conducted in connection with a prospective purchase.

The pivotal point, however, is that, in our opinion, there was no view of the evidence in which it was proper to say that at the time of the accident the negligent driver was acting for the defendant Motor Company in the sense that it was responsible for his conduct.

There are many cases applying the controlling principle to varying facts. Among these may be mentioned Bertrand v. Mutual Motor Co. (Tex. Civ. App.), 38 S. W. (2d), 417; Harts v. Raney Chevrolet Co., 202 N. C., 807, 164 S. E., 321; Saums v. Parfet, 270 Mich., 165, 258 N. W., 235; Graham v. American Employers' Ins. Co. (La. App.), 171 So., 471.

But the plaintiff also insists, and strongly, that she was entitled to go to the jury by reason of what she refers to as the "statutory presumption" arising upon proof of the fact that the automobile which caused the injuries was registered in the name of the defendant. The statute relied upon is contained in Code section 2702 and provides that such proof "shall be prima facie evidence of ownership" of said automobile and likewise "prima facie evidence that said vehicle was then and there being operated by the owner or by the owner's servant for the owner's use and benefit and within the course and scope of his employment."

The plaintiff made the required proof of registration and it seems to be the contention that under the circumstances of the present case the presumption resulting by virtue of the statute was sufficient to require the submission to the jury of the question of whether the defendant Motor Company was liable for the negligent conduct of the driver under the doctrine of respondeat superior. This is not sound, as we shall now show.

We wish first to make plain that in the ensuing discussion we are not referring to the presumption of ownership contemplated by the statute because under the facts of this case, apart from other reasons, the question of whether defendant Motor Company owned the car was not determinative of the issue we are now considering; nor was it material to that issue. We refer only to the other conclusion tentatively required by the statute with respect to whether a given vehicle was being operated by a servant acting within the scope of his employment.

It is true that the statute does say that proof of registration shall be "evidence" of the other facts mentioned. But significance must be given to the qualifying words, "prima facie;" and the whole provision construed in the light of the well-known situation

that brought about the enactment in the first place and the object sought to be accomplished thereby. When this is done it is logical to hold, as has already been held, that no more than a bare, rebuttable presumption was intended to be raised. Gouldener v. Brittain, 173 Tenn., 32, 114 S. W. (2d), 783; Green v. Powell, 22 Tenn. App., 481, 124 S. W. (2d), 269; Long v. Tomlin, 22 Tenn. App., 607, 125 S. W. (2d), 171; Wright v. Bridges, 16 Tenn. App., 576, 65 S. W. (2d), 265.

■■ The true effect therefore of the Code provision is to give to proof of registration a procedural consequence that would not otherwise result. This is sometimes rather aptly referred to as an administrative presumption. See Cruse-Crawford Mfg. Co. v. Rucker, supra. It is available only in the absence of any evidence upon the subject; and operates merely to shift to the defendant the burden of going forward with the evidence on the point involved. When this burden has been met the presumption is functus officio.

It follows that this so-called statutory presumption is not evidentiary in the respect that it can be weighed against evidence. This is true because it is arbitrary in the sense that the proposition presumed, i. e., that the given defendant's car was being operated by his servant acting within the scope of his employment, is not a logical deduction from the fact upon which it is based, i. e., registration of the vehicle in the defendant's name; but, upon the contrary, is arbitrarily required by the statute as a matter of expediency. A presumption of this kind is to be distinguished from an inference which, as a matter of logic, can be properly drawn from a proven fact or facts. Such an inference is itself evidence and remains in the case even though there be evidence opposed thereto with respect to point involved.

It is also to be distinguished from "presumptions" that logically attend fundamental facts that are characteristic of human nature, as the presumption against suicide resting upon man's love of life, a basis supplied by the common knowledge and experience of mankind; for it is held in this jurisdiction that this "presumption" as well as the "presumption of innocence" and possibly that in favor of sanity (See Pierce v. Pierce, 174 Tenn., 508, 519, 127 S. W. (2d), 791), whether as exceptions or otherwise, are to be thrown in the scales and weighed along with the other evidence pro and con. Bryan v. Aetna Life Ins. Co., 174 Tenn., 602, 130 S. W. (2d), 85.

Upon the other hand, as already pointed out, the procedural consequence contemplated by the Code provision belongs to that class of presumptions concerning which it was said in Frank v. Wright, 140 Tenn., 535, 548, 205 S. W., 434, 437: "Now presumptions are raised to take the place of proof; 'where the proofs are present there is neither foundation or room for the presumption'," citing

Keller v. Over, 136 Pa., 1, 20 A., 25; Galpin v. Page, 18 Wall., 350-366, 21 L. Ed., 959.

It also falls within the purview of the pronouncement in Bryan v. Aetna Life Ins. Co., supra [174 Tenn., 602, 130 S. W. (2d), 89], reading as follows: "We have a number of decisions that a bare presumption disappears upon the introduction of circumstantial rebutting evidence," citing Marquet v. Aetna Ins. Co., 128 Tenn., 213, 159 S. W., 733, L. R. A. 1915B, 749, Ann. Cas. 1915B, 677; Brown v. Hows, 163 Tenn., 138, 155, 40 S. W. (2d), 1017; Central of Georgia R. Co. v. Fuller Combing Gin Co., 2 Tenn. Civ. App. (2 Higgins), 343.

It is not amiss to say that the distinction between what, for convenience of expression if not otherwise, may be termed "bare" or "arbitrary" presumptions raised as a matter of expediency for procedural purposes, and inferences that as a matter of logic are properly drawable from other facts, is an important one which it is well enough to keep in mind in the trial of cases where presumptions are relied on.

█ █ Now to the case again: the plaintiff insists that even so, since the countervailing evidence consisted of the testimony of witnesses who were discredited, her presumption was not destroyed but upon the contrary remained in the case and of itself required that the question in hand be submitted to the jury. The rationale of this contention is that it is the exclusive province of that body to pass upon the credibility of witnesses who have been impeached or discredited. Assuming that this insistence is bottomed upon a sound rule of procedure (Welch v. Young, 11 Tenn. App., 431), we think it has no application to the situation disclosed by the record before us.

The evidence opposed to the statutory presumption consists, according to plaintiff's contention, of the testimony of the witnesses Guerini and Cianciola. With respect to the probative value of that of the latter, the plaintiff occupies a rather anomalous position, to say the least of it. She first relies almost solely upon his testimony to show a proposition which under her theory she asserts is essential to her case, namely, that Mrs. Cianciola and not her husband was the purchaser or prospective purchaser of the car. When she comes to rely upon the statutory presumption she undertakes to maintain that this witness is so discredited as that the jury would have been warranted in disbelieving him altogether. In fact, in discussing this phase of her case, she asserts in her brief that "the witness D. L. Cianciola is contradicted on almost every material fact." Hence, she argues, his testimony was not available to dissipate the presumption.

We need not dwell on the contention that at the present stage of this proceeding the plaintiff ought not to be allowed to occupy

at the same time both of these flatly contradictory positions with respect to the probative value of testimony of the witness Cianciola. We have already shown why we think that Cianciola's testimony cannot be regarded as evidence for any purpose upon the issue contemplated by the presumption, and nothing further need be said about that.

But not so with respect to the testimony of the witness Guerini. He was not impeached; nor was he contradicted with respect to any matter material to the issues involved. Contradictions upon immaterial matters that are merely colorable or unsubstantial are not sufficient to require the application of the rule. Gouldener v. Britain, 173 Tenn., 32, 114 S. W. (2d), 783.

Without undertaking to set it out in further detail, we are satisfied to hold that the salesman's testimony operated to knock the presumption out of the case and so leave the plaintiff propless with respect to the essential element of the cause of action which she employed it to supply.

Now, we do not intend to imply that even where a witness giving testimony opposed to the statutory presumption is impeached or otherwise subjected to a discrediting attack, this presumption remains in the case in the sense that it is to be weighed by the jury along with the evidence in determining wherein lies the preponderance with respect to the issue involved; for we do not believe that to be true. Upon the other hand, the fact that the rebutting evidence comes from impeached or challenged sources otherwise assailed merely prevents the destruction of the presumption, permitting it to operate in the sense that by reason thereof the judge cannot take the question from the jury, thus leaving it to that body to pass upon the credibility of the witnesses under fire by giving to their testimony the weight they think it is entitled to or rejecting it altogether, just as they see fit and proper; but the point is, that in doing this they are not to consider or be influenced by the presumption. If the challenged testimony be rejected by the jury, then upon the strength of the presumption the finding on that question ought to be for the plaintiff; for the rejection of the testimony would leave no counter-evidence in the case: conversely, if the testimony be accepted notwithstanding the attack upon its source, the finding ought to be for the defendant; for such acceptance validates the testimony so that it destroys the presumption and renders it unavailable for weighing against the counter-evidence or for any purpose.

So, it comes down to this: that a presumption of the kind we have in hand operates primarily on the power of the judge and is not properly a factor to be considered by the jury in any event; for, as we say, if there be no credible evidence at all upon the proposition which it contemplates, then by virtue of the presumption

the plaintiff prevails as a matter of law upon that particular issue; whereas, if there be any such evidence there is no room for the presumption.

Upon the general subject, see Wigmore on Evidence, Vol. 5, sec. 2490, et seq.

There is of course involved in all of this the distinction between the "burden of proof," and "the burden of evidence," or "the burden of going forward with the evidence," which has been so authoritatively pointed out and emphasized, that it would hardly become us to go into it again; yet we say now as we have said before that it is a very good thing for a trial practitioner to keep in the front of his mind. See North Memphis Savings Bank v. Union Bridge Co., 138 Tenn., 161, 196 S. W., 492; Shockley v. Morristown Produce & Ice Co., 158 Tenn., 148, 111 S. W. (2d), 900; Whipple v. McKew, 166 Tenn., 31, 60 S. W. (2d), 1006.

Although we disagree with him upon the determinative questions, we think we ought to say that we are indebted to plaintiff's counsel, as well also to counsel for the defendant, for a very able and painstaking presentation of the interesting questions in the case. Some of those raised by the defendant we have not found it necessary to pass upon.

For the reasons indicated, we think the judge should have sustained the motion of the defendant, Southern Motors, Inc., for a directed verdict and dismissed the suit as to it. This will be done here. The plaintiff will pay the costs of the cause.

Senter and Ketchum, JJ., concur.