CLARENCE CUTSHAW, Plaintiff in Error, v. EVA MEREDITH RANDLES, Defendant in Error.—357 S. W. (2d) 628.

Eastern Section.   May 9, 1961.

Certiorari Denied by Supreme Court, July 26, 1961.

Wallace Burroughs and Poore, Cox & McAuley, Knoxville, for plaintiff in error.

John R. Haynes, Knoxville, for defendant in error.

McAMIS, P. J.   Mrs. Eva Meredith Randles sued plaintiff in error Clarence Cutshaw and his son, Don Cutshaw, for personal injuries sustained by Mrs. Randles when she was struck by an automobile owned by Clarence Cutshaw, operated by the son.

There was a judgment for Mrs. Randles in the sum of $8,500.00 against Clarence Cutshaw, based upon a jury finding that, at the time of the accident, the son was upon a mission for the father.

The only assignment of error of Clarence Cutshaw who appealed is that there is no material evidence that, at the time of the accident, the son was upon a mission for him and that, upon that ground, the court should have directed the jury to return a verdict in his favor.

Since the proof showed without dispute that the son was married and living apart from his father, the Court instructed against the plaintiff on the family purpose doctrine.   Liability on that theory having been eliminated, the sole question for our determination is whether

under the evidence when taken in the light most favorable to the plaintiff, reasonable minds might disagree as to the conclusion to be reached.

The facts are correctly stated in the reply brief from which we quote:

"The accident, out of which this action arose, occurred May 15, 1957, in the City of Knoxville, Tennessee, at the intersection of North Sixth Avenue and Washington Avenue, one block West of the Standard Knitting Mills. Approximately one week prior thereto, the defendant was hospitalized in St. Mary's Hospital in the same City of Knoxville, Tennessee, leaving his wife and two minor daughters unattended to at the home of defendant, some 14 miles out from Maryville and in the upper end of Blount County, Tennessee. Defendant was the owner of the automobile involved in the accident, which he had purchased for his use and for the use of his wife and two minor daughters, none of whom could drive. When defendant went to the hospital in Knoxville, he left his automobile out in the front driveway at his home. He left the keys to the automobile in a little vase on top of the Television set. The defendant requested his wife to contact his son and daughter-in-law, who lived in the City of Maryville, Tennessee, and have them stay at his home while he was in the hospital. Defendant's son was over 21 years of age and owned his own automobile. He had been out of work for approximately two weeks. The son's wife worked at the Standard Knitting Mills in Knoxville, Tennessee. For several nights prior to the accident, the son and his wife stayed at the home of defendant, as requested by the defendant. On the morning of the accident, the son drove his wife to work in Knoxville, Tennessee, and though his

own car was at the home of the defendant, the son took defendant's car, something he testified he had not previously done. After the son had left his wife at her place of employment, he had proceeded in a westerly direction about one block when the accident in question occurred. According to the son, his sole purpose of the trip was to take his wife to work in Knoxville, and after letting her out of the car he was going to return to his own home in Maryville. However, the son testified that during the period of time his father had been in St. Mary's hospital, and in which period the son and his wife had looked after his mother and sisters, they had driven over to Knoxville about every night to see his father. Furthermore, the son testified that he would come to Knoxville to get his wife after work, and sometimes they would go by St. Mary's hospital in Knoxville and see his father on their way back home to Blount County. That his wife ordinarily rode to work in Knoxville with some other people. That the day of the accident was the first time he had driven his wife to work, as well as the first time he had used this automobile of his father.''

The only explanation offered by the son for taking his father's car on this trip was that it had more gas in it than his own. The use of the car was never previously discussed by the son either with his father or mother. She discovered that it was missing an hour or two after he left to take his wife to work.

We can find in the record no proof from which a jury might infer that the use of the car on this occasion was in any way connected with the request of the father that his son and daughter-in-law stay with his wife and daughters at night while he was in the hospital; that,

at the time of the accident, the son was going to visit his father at the hospital for any purpose, social or otherwise, or that the father agreed, either directly or indirectly, to furnish transportation for the daughter-in-law to or from work while they stayed at his home. There was no reason to assume that she expected or would need such transportation because the son had a car of his own to use for that purpose.

The case is presented by counsel for plaintiff as if the son, at the time of the accident, had been engaged in doing something the father might have been doing for his wife and daughters had he not been confined to the hospital. The undisputed proof, however, shows that the son was not upon such a mission but upon one solely for the benefit of himself and his wife. The only circumstance which in any way connects the father with the presence of the son and daughter-in-law in his home was his desire that they be there for the protection of his wife and daughters while he was compelled to be away and we can not see how the use of the car on this trip can reasonably be brought within the scope of that purpose.

■■ It is true agency, like any fact, can be inferred from proven circumstances and if such inference can reasonably be drawn it becomes evidence of agency although opposed by other credible evidence.

■ The same rule does not apply to the statutory presumption of agency arising from registration and proof of ownership. Southern Motors v. Morton, 25 Tenn. App. 204, 154 S. W. (2d) 801; Bell Cab & U-Drive-It Co. v. Sloan, 193 Tenn. 352, 246 S. W. (2d) 41

In the Bell Cab case, here strongly relied upon by plaintiff, the Supreme Court in an opinion by Mr. Justice Burnett held the case was properly submitted to the jury upon the plaintiff's evidence that the operator of the car at the time of the accident was a regular cab driver of the defendant; that he had on a driver's uniform; that the car had defendant's name on it and that there was a passenger in the back seat. The inference from these circumstances was that the cab was being operated in the usual course of the defendant's business. It was held that this inference remained in the case as evidence for the jury to consider notwithstanding the positive testimony of witnesses that the accident happened after the driver had quit work for the day and that he had borrowed the cab to look for an apartment.

██ The facts here, as we view the case, are in no way analogous. The son was not in the general employ of the owner. At most, the only agency shown had to do with the comfort and protection of the owner's family at his home in Blount County. The undisputed evidence shows that that purpose was not being served at the time of the accident. The burden of showing that it was is upon the plaintiff. We must, therefore, hold that there was no evidence to take the case to the jury and dismiss the case as on direct verdict. Costs of appeal will be taxed to plaintiff and defendant Clarence Cutshaw is relieved of costs below.

Hale and Cooper, JJ., concur.