Ronnie H. GAMBILL, Individually and as next friend for Holly Gambill, a minor, and on Behalf of Amanda Morciz, a minor, Plaintiffs–Appellants,

v.

MIDDLE TENNESSEE MEDICAL CENTER, INC., and Timothy J. Beasley, M.D., Defendants–Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Feb. 5, 1988.

Permission to Appeal Denied by Supreme Court April 25, 1988.

R. Steven Waldron, Murfreesboro, for plaintiffs-appellants.

William Sutherland, Nashville, for defendants-appellees.

## OPINION

TODD, Presiding Judge.

The Trial Court and this Court have granted permission to the plaintiff for interlocutory appeal from a partial summary judgment dismissing the defendant, Timothy J. Beasley, M.D.

Plaintiffs sued Middle Tennessee Medical Center, Inc., a hospital, and Timothy J. Beasley, M.D., a physician, for wrongful death of Denise Gambill on grounds of negligent treatment or care of deceased.

Dr. Beasley moved for summary judgment. The Trial Court sustained the motion.

The sole issue for review is the correctness of the judgment of the Trial Court.

T.R.C.P. Rule 56.03 provides that:

... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

In ruling on motions for summary judgment, both the trial courts and the appellate courts must consider the matter in the same manner as a motion for directed verdict made at the close of plaintiff's proof; i.e., it must view all the evidence in the light most favorable to the opponent of the motion and draw all legitimate conclusions of fact therefrom in that favor. If after so doing a disputed issue of material fact is made out, the motion must be denied. *Berry v. Whitworth*, Tenn.App.1978, 576 S.W.2d 351; *Dickinson v. Sanders Mfg. Co.*, Tenn.App.1983, 658 S.W.2d 535.

The burden of showing that there is no genuine issue of fact falls on the party moving for summary judgment. *Tucker v. Metropolitan Government, etc.*, Tenn.App. 1984, 686 S.W.2d 87.

If the moving party presents uncontradicted evidence which entitles him to judgment, and the opponent of the motion presents no evidence to contradict that of the moving party, then summary judgment for the moving party is in order. *Tucker v. Metropolitan Government, etc.*, supra.

█ While motions for summary judgment are generally inappropriate in professional malpractice cases, if the only issue is one which requires expert testimony and there is no expert response to an affidavit by an expert, then summary judgment is proper. *Ayers v. Rutherford Hospital*, Tenn.App.1984, 689 S.W.2d 155.

█ In medical malpractice actions, affidavits by medical doctors which clearly and completely refute plaintiff's contention af-

ford a proper basis for dismissal by summary judgment in the absence of proper responsive proof. *Bowman v. Henard,* Tenn.1977, 547 S.W.2d 527.

Summary judgment procedure is not to be regarded as a substitute for trial of disputed issues of fact. As on motion for directed verdict, a court deciding a motion for directed verdict must view the pleadings and evidence before it in the light most favorable to the opponent of the motion on an issue by issue basis. If the court entertains any doubt whether a genuine issue exists as to any material fact, it is the duty of the court to overrule the motion. *Poore v. Magnavox Co. of Tennessee,* Tenn.1984, 666 S.W.2d 48.

The following facts are uncontroverted. The deceased was admitted to the Middle Tennessee Medical Center for child birth under the care of the defendant Beasley at 8:45 p.m. on July 28, 1983. On orders of Dr. Beasley, medication was administered to deceased to augment labor and delivery. At 10:00 p.m., the medication was discontinued because of deceleration of fetal heart rate. At 6:00 a.m. on July 29, the administration of the medication was renewed. It was discontinued at 6:30 a.m., restarted at 7:00 a.m. and continued until 11:49 a.m. when the patient was prepared for a surgical procedure which was concluded at 1:30 p.m. on July 29, 1983. During the surgical procedure unusual bleeding occurred. The patient subsequently expired from complications relating to the childbirth, medication and surgical procedure.

It is uncontroverted that the condition of the patient and the indications of monitoring devices required more careful attention that the ordinary child birth patient.

The issues are the standard of acceptable professional practice under the circumstances and whether Dr. Beasley's care conformed to that standard of acceptable professional practice.

It is uncontroverted that Dr. Beasley saw the patient at 9:07 a.m. on July 29, that he instructed the attending nurse to call him if any problem arose and went to his office to receive patients. He was called and returned to the patient at 11:52 a.m.

The issues are narrowed to whether the behavior of Dr. Beasley from 9:07 to 11:52 a.m. conformed to the standard acceptable professional practice. Dr. Beasley and his witnesses, Drs. Vanhooydonk and Arnold, testified unequivocally that all of the behavior of Dr. Beasley conformed to the standard of acceptable professional practice.

The witness for the plaintiffs was Dr. Patrick Lavery. His testimony was before the Trial Court in three forms as follows:

A deposition filed December 18, 1986.

An affidavit filed February 3, 1987.

A letter filed May 5, 1987.

The deposition of Dr. Lavery, filed on December 18, 1986, states:

Q. Do you have an opinion whether or not Dr. Beasley's care and treatment of this patient conformed with the standard of care applicable to Murfreesboro, Tennessee?

A. I would say when he was caring for the patient, he did those things that were appropriate and fitting the standard. I think in an ideal world he perhaps should have been querying the nursing staff more often from 9:07 until he was contacted.

But, on the other hand, if he felt he was getting sufficient care on their part and given the time of day, I think the standard is that a physician who is engaged in stimulating a patient or using Oxytocin is that he should be immediately accessible and is not required to be bedside during that labor.

The affidavit of Dr. Lavery, filed on February 3, 1987, states:

At all times since I became licensed to practice medicine in the state of Kentucky in 1973, I have been familiar with the standard of care *required* of obstetricians and gynecologists in communities such as Murfreesboro, Tennessee, and hospitals such as Middle Tennessee Medical Center, Inc.

I have reviewed the medical records of Denise Gambill while she was hospitalized at Middle Tennessee Medical Center, Inc. on July 28 and 29, 1983, as well as

the hospital records from Vanderbilt Hospital, including the autopsy report.

It is my opinion that it is the responsibility of a physician, such as Dr. Timothy Beasley, maintaining a stimulated labor on a patient who is at high risk, such as Denise Gambill, deceased, as demonstrated by previous signs of intermittent fetal distress, to maintain close contact and be reasonably available for the nursing staff. This close contact includes the physician's personally checking on the patient at a frequency of at least every two hours.

The patient, Denise Gambill, had been monitored for an extended period of time up until 9:07 a.m. on the 29th of July 1983. It is my opinion that the monitor tracing demonstrated occasional episodes of a suspicious fetal response with occasional late decelerations and variable decelerations at intermittent times during the course of the patient's labor, after her admission on the 28th day of July, 1983, at 3:46 p.m., and further, that suspicious patterns had been present at 7:19 a.m. on July 29, 1983, with a deceleration and again at 8:00 a.m. on July 29, 1983. An appropriate review of this monitor tracing would lead the physician responsible for the patient's care to exert above average concern for the continued care of the patient.

From 9:07 until 11:52 a.m. on July 29, 1983, Dr. Timothy Beasley was not in attendance, nor apparently made any effort to communicate about the well-being of Denise Gambill. Based on the need for adequate progress in labor, particularly a stimulated labor, the standard care *expected* of a physician in assessing the progress of the patient in labor would necessitate his reviewing the patient's clinical condition on at least a two-hour basis. In this case, because of the previous suspicious patterns present on the monitor tracing, it was a deviation from the standard of care *expected* of physicians such as Dr. Timothy Beasley for him not to have checked on the patient, Denise Gambill, deceased, from 9:07 a.m. until 11:52 a.m. on July 29, 1983. (emphasis supplied.)

Although not determinative of this appeal, it should be noted that the verbiage of the foregoing affidavit does not state the *"standard of acceptable professional practice"* as required by T.C.A. § 29–26–115, but uses the expressions, "standard of care *required*" and "standard of care *expected*". Counsel would be well advised to use the statutory words in questioning a medical witness, and to insist that the witness respond in like manner.

The motion for summary judgment was heard by the Trial Judge on March 30, 1987. Therefore, the deposition filed on December 18, 1986, and the affidavit filed on February 3, 1987, are properly before this Court as part of the technical record. See Rule 4(a) Rules of this Court.

On May 5, 1987, there was filed with the Trial Clerk a letter from Dr. Lavery addressed to counsel for plaintiff and concluding:

Subscribed to before me this 29th day of April, 1987.

s/*Lillian A. Jones*

Notary Public

State of Kentucky, Jefferson County

My commission expires March 1, 1991.

■ It is noted that there is no certificate that Dr. Beasley *swore* to the truth of the contents of the letter. It is therefore not an affidavit. The letter is bound in the Technical record; but, having been filed after the date of the hearing, it cannot be a proper part of the record on appeal without compliance with Rule 4(b) of the Rules of this Court. The memorandum of the Trial Judge refers to a letter of Dr. Lavery dated April 29, 1987, but the letter is not authenticated and certified by the Trial Judge as required by Rule 4(b). The lack of authentication and certification is not determinative of this appeal for, as stated in the memorandum of the Trial Judge, the letter:

... seeks to clarify the conflict (between the affidavit and deposition) ... he sees no conflict in his comments in his deposition and affidavit.

Moreover, in the absence of objection to the letter, this Court has waived the infir-

mity and has considered the letter for what it may be worth. It states:

In the affidavit on page 50, I indicated when asked whether Dr. Beasley was conforming with the standard of care applicable in Murfreesboro, Tennessee, that "I would say when he was caring for the patient he did those things that were appropriate and fitting the standard. I think in an ideal world he perhaps should have been querying the nursing staff more often, from 9:07 until he was contacted." In my affidavit I indicated that "based on the need for adequate progress in labor, particularly a stimulated labor, the standard of care expected of a physician in assessing the progress of the patient in labor would necessitate his reviewing the patient's clinical condition on at least a two-hour basis. In this case because of the previous suspicious patterns present on the monitor tracing, it was a deviation from the standard care expected of physicians such as Dr. Timothy Beasley for him not to have checked on the patient, ...". Mrs. Gambill has demonstrated herself to be a high risk obstetrical patient on several accounts. The previous episodes of occasional late decelerations and variable decelerations placed her fetus at jeopardy for significant fetal distress. The normal progress of a labor is usually ascertained on the basis of significant change over two-hour periods. It is my opinion that a physician monitoring, but not personally at the bedside of a high risk patient at risk for fetal distress, should inform himself about the patient's condition on at least a two-hour basis, either by patient examination or by querring the nursing staff. The management of a high risk pregnancy requires physician judgments which are above and beyond those of normal obstetrical nurses. In that sense, I see no conflict in my comments in the deposition and in the affidavit. Simply, it is my feeling that in a patient who is at risk for fetal distress and who is not being monitored bedside by the physician, that physician contact should be maintained on a reasonably frequent basis and this basis based on the recognized assessment of labor progress should be at least at a q 2 hourly frequency.

The memorandum of the Trial Judge states:

The critical question in this case is; did the Defendant, Dr. Beasley deviate from the standard of care existing in Murfreesboro, Tennessee while treating the decedent, former wife of the Plaintiff herein?

A careful reading of the depositions of Drs. Beasley, Van Hooydonk, Lavery and Arnold indicates that Dr. Beasley did not deviate from the standard of care applicable to Murfreesboro, Tennessee.

The expert witness, J. Patrick Lavery, M.D., in his deposition testified as follows:

. . . .

It is to be observed that Dr. Lavery stated in his deposition that Dr. Beasley "did those things that were appropriate and fitting the standard." However, in the affidavit last filed the doctor stated that failure to check on the patient from 9:07 a.m. until 11:52 a.m. "was a deviation from the standard of care expected of physicians."

. . . .

This Court holds that Dr. Lavery's contradictory statements negate each other. Dr. Lavery is the only expert to testify that Dr. Beasley deviated from the standard of care. As a matter of law the Court would be required to remove the issue from consideration by the jury because of the contradictory testimony and grant a directed verdict; therefore it is appropriate to grant the Motion for Summary Judgment on behalf of the Defendant, Timothy J. Beasley, M.D.

It is seen that the ruling of the Trial Judge was based upon the rule of law in this state that contradictory statements of a witness in connection with the same fact have the result of "cancelling each other out."

In *Johnson v. Cincinnati N.O. & T.P. Ry. Co.*, 146 Tenn. 135, 240 S.W. 429 (1922), the issue was the terms of an oral agree-

ment to construct a railroad. The plaintiff was the only witness to his version of the contract. The Supreme Court said:

> The question here is not one of the credibility of a witness or of the weight of the evidence; but it is whether there is any evidence at all to prove the fact. If two witnesses contradict each other, there is proof on both sides, and it is for the jury to say where the truth lies; but if the proof of a fact lies wholly with one witness, and he both affirms and denies it, and there is no explanation, it cannot stand otherwise than unproven. For his testimony to prove it is no stronger than his testimony to disprove it, and it would be mere caprice in a jury upon such evidence to decide it either way.
>
> . . . .
>
> Complainant testified that the contract was to pay cost, and then that the contract was to reclassify the materials on a hard rock basis, and offered no explanation of this inconsistency that would enable a court or jury to decide between the two statements. Is this any evidence at all of an agreement to pay cost? If a plaintiff should testify with equal positiveness that defendant stole his horse and that some third person stole his horse, no one would doubt that the case ought not to go to the jury.
>
> We are constrained, therefore, to conclude that there was no evidence to prove a contract to pay cost, and that the jury should have been instructed to answer the first issue in the negative. . . .
>
> . . . .
>
> We wish to add that we have searched complainant's testimony for an explanation of its inconsistencies that would entitle it, upon grounds of inadvertence or mistake, to some weight on the side of the jury's verdict upon these two issues, but could find none, and that, when for this purpose we went outside of his testimony and looked to his conduct and correspondence before the present difference arose, the impossibility of any such explanation was only emphasized. 146 Tenn. at 158, 160, 161, 240 S.W. 429.

In *De Grafenreid v. Nashville R. & L. Co.*, 162 Tenn. 558, 39 S.W.2d 274 (1931) the issue was whether plaintiff was injured by a defective light fixture. At the third trial of the case, one of plaintiff's witnesses was absent; and the parties were permitted to present the testimony of the same witness at the two preceding trials of the same case. One party presented the testimony of the witness at one of the trials that she was present and saw when plaintiff was injured. The other party presented testimony of the same witness at the other previous trial that she was in another room and did not see the incident. The Supreme Court quoted from *Johnson v. Cincinnati N.O. & T.P. Ry.* supra, and said:

> . . . In this situation the Court by request charged the following: "If a witness has testified to a certain fact at one time, and at another time testifies differently regarding the same fact, then the latter statement nullifies the former, and the testimony of the witness as to that particular fact amounts to no testimony."
>
> . . . .
>
> The language of the trial Judge herein which is complained of is, after all, merely a statement of a result which must necessarily follow, whatever the relationship of the witness to the litigation. Two sworn statements by a single witness are introduced by consent of counsel which are in direct conflict. No effort was made to introduce any explanation. Whether the trial Judge so charged or not, the one statement did off set and nullify the other. Ordinary rules of procedure for impeachment of a witness hardly apply. 162 Tenn. at 560, 561, 39 S.W.2d 274.

In *Southern Motors, Inc., v. Morton*, 25 Tenn.App. 204, 154 S.W.2d 801 (1941) this Court said:

> Without further specific reference thereto it is clear to us that at one stage of his examination the tenor and effect of Cianciola's testimony was that his wife, and not he was the purchaser or prospective purchaser of the car who had to be satisfied by a demonstration if delivery of the new car was to be accepted and that at another state he testified

directly to the contrary, that is, that he himself was the purchaser and that the car involved in the accident had merely been loaned to him in order that he might "try it out" to see whether he was satisfied with his new purchase.

The contradiction was very flat and wholly unexplained: It, therefore, did not go merely to the weight to be given the witness' testimony but robbed it of its substance so that with respect to that issue it cannot be properly treated as any evidence; for who can say truly and also with reason that he was right one time and wrong the other? (citing authorities.) 25 Tenn.App. at 209, 154 S.W.2d 801.

In *Taylor v. Nashville Banner Pub. Co.*, Tenn.App.1978, 573 S.W.2d 476, this Court recognized and applied the "cancellation rule", restricting it to cases where the inconsistency in the testimony of the witness is unexplained and neither version is corroborated by other evidence.

Reverting to the statements of Dr. Lavery, in his deposition, he said:

I would say that *when he was caring for the patient he did those things* that were appropriate and fitting the standard.

. . . .

But on the other hand ... I think that the standard is that a physician ... should be immediately accessible and is not required to be bedside during labor. (emphasis supplied)

In his subsequent affidavit, Dr. Lavery said:

It is my opinion that it is the responsibility of a physician ... to maintain close contact.... This close contact includes the physician's personally checking on the patient at a frequency of at least every two hours.

... *it was a deviation from the standards for him not to have checked on the patient* ... from 9:07 a.m. until 11:52 a.m. (emphasis supplied)

The foregoing is susceptible of one interpretation producing inconsistency and it is also susceptible to another interpretation producing no inconsistency. The empha-

sized words of the first sentence are ambiguous. They may mean "when Dr. Beasley was personally present with the patient, what he did do was sufficient and satisfactory", or they may mean "at all times when Dr. Beasley was responsible for the treatment of the patient, his actions and inactions were proper." The first interpretation, limited to actual presence and acts, creates no inconsistency with the second statement which refers to inaction during periods of absence from the bedside of the patient. The second interpretation creates an inconsistency with the immediately following statement that the physician should be "immediately available" and with the subsequent affidavit that the physician should check on the patient every two hours.

In *Packet Co. v. Hobbs*, 105 Tenn. 29, 58 S.W. 278 (1900), it was held that if the meaning of relevant oral statements made by or to a party and quoted by a witness was for the jury. By the same token, the meaning of the words "when he was caring for the patient" and "he did those things" is a fact question for a jury to consider in weighing the possible contradictions in and credibility of the testimony of the witness, rather than a law question for determination by the Trial Judge on motion for summary judgment or directed verdict.

■ Viewing the evidence of plaintiff in its most favorable light, this Court concludes that a jury might justifiably interpret Dr. Lavery's testimony to mean that the behavior of Dr. Beasley was proper in all respects except the length of his absence from the bedside from 9:07 a.m. to 11:52 a.m.

In the present case, the plaintiff has offered evidence which, viewed in the light most favorable to plaintiff, does produce a disputed question of fact as to the negligence of the defendant, Dr. Beasley.

The evidence offered by plaintiff at the trial will undoubtedly be more fully explored, explained and reconciled at the trial. At the present preliminary stage of the proceedings, there should not be a dismissal for inconsistency in testimony of a wit-

ness unless it represents an unequivocal and irreconcilable conflict.

Such an unequivocal and irreconcilable conflict does not exist in the testimony of Dr. Lavery in this record.

The summary judgment dismissing Dr. Beasley is reversed. Costs of this appeal are taxed against Dr. Beasley. The cause is remanded for further proceedings.

Reversed and remanded.

CANTRELL and KOCH, JJ., concur.