**UNITED STATES of America,**
**Plaintiff,**

v.

**2001 HONDA ACCORD EX VIN**
**# 1HGCG22561A035829,**
**Defendant.**

**No. CIV.A.3:02–CV–0831.**

United States District Court,
M.D. Pennsylvania.

Jan. 30, 2003.

---

Christopher H. Casey, U.S. Attorney's Office, Scranton, PA, for Plaintiff.

James A. Swetz, Cramer, Swetz & McManus, Stroudsburg, PA, for Defendant.

### MEMORANDUM and ORDER

CONABOY, District Judge.

This case arises out of a civil forfeiture action brought by the United States against Defendant vehicle, a 2001 Honda Accord EX VIN # 1HGCG22561A035829 ("the Honda"), for its alleged use in facilitating the transportation and sale of methylene-dioxymethamphetamine (MDMA), otherwise known as Ecstasy. (Doc. 1). The matter before the Court is Claimant Kimberly A. Marckesano's ("Marckesano" or "Claimant") Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Motion has been fully briefed by the parties. A hearing was held on this matter on January 22, 2003. The Motion for Summary Judgment is ripe for disposition.

This Memorandum and Order will also address Claimant's Motion to Amend the Pleadings pursuant to Rule 15 of the Federal Rules of Civil Procedure. Claimant made this Motion during the hearing on the Summary Judgment Motion.

For the reasons stated herein, Claimant's Motion for Summary Judgment is GRANTED and Claimant's Motion to Amend the Pleadings is GRANTED.

### BACKGROUND

On October 19, 2001, Michael Mase ("Mase") attempted to deliver and sell to an undercover Pennsylvania State Police Trooper one thousand (1,000) tablets of Ecstasy in exchange for $9,000. (Doc. 15, at 1). Mase drove the Honda, which is now the subject of the *in rem* proceeding, to a designated location in Stroudsburg, Pennsylvania, to complete the transaction. (Id.) Mase was immediately arrested upon showing to the Trooper the tablets and Drug Enforcement Administration ("DEA") agents seized the Honda. (Id., at 2). The tablets were confiscated and laboratory analysis later confirmed that they were Ecstasy. (Id., at 1).

On November 27, 2001, a federal grand jury sitting in Scranton returned an indictment that charged Mase with two counts of possession with intent to distribute and distribution of Ecstasy in violation of 21 U.S.C. § 841(a)(1). On March 5, 2002, Mase pleaded guilty to Count II of the Indictment. (Id., at 2).

The DEA commenced an administrative forfeiture action on December 5, 2001.(Id.)

On or about February 26, 2002, Marckesano filed a Petition for Remission or Mitigation of Forfeiture with the DEA, as well as a Notice of Claim and Intent to Contest the Forfeiture Judicially. (Doc. 4). On May 16, 2002, the Government filed a Verified Complaint of Forfeiture *In Rem* alleging that the Honda is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(4), in that it was a conveyance used to transport to facilitate the transportation, sale or possession of a controlled substance. (Doc. 1).

Marckesano filed a Motion for Summary Judgment on September 30, 2002. (Doc. 9). In this Motion, she asserts that as an "innocent owner," she is entitled to recover the Honda. (Id.). In its supplemental brief, the Government submits that summary judgment is improper since there is a genuine issue in this case on two material facts: (1) legal ownership of the vehicle; and (2) dominion and control over the vehicle. (Doc. 22).

### DISCUSSION

#### A. SUMMARY JUDGMENT

In our analysis of this matter we keep in mind the various cases that direct us regarding summary judgment. A motion for summary judgment can be a very powerful motion. It is a legal method of totally resolving a case without a trial based on a review of pleadings and submissions of the parties. Granting summary judgment is appropriate in cases where there are no significant facts in dispute. Because of the finality of granting summary judgment motion, we must carefully examine the case and supporting documents along with the submissions from the Plaintiff who hopes to keep his case alive. Federal Rule 56 is a mechanism for "asses[ing] the proof

in order to see whether there is a genuine need for trial." Fed.R.Civ.P. 56(e) advisory committee's notes (amended 1963).

Summary judgment is somewhat controversial and can be seen as upsetting the precarious balance between expediency and the preservation of our Seventh Amendment [1] right to jury trial. Thus, we are vigilant and careful not to use it to preclude a party's right to trial or as a vehicle to simply move the case more quickly through the judicial system.

We follow considerable guidance in determining whether summary judgment should be granted. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury,* 114 F.3d 407, 410 n. 4 (3d Cir.1997)(*citing* Fed.R.Civ.P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

These rules make it clear that in order for a moving party to prevail on a motion for summary judgment, the party must show two things: (a) that there is no genuine issue as to any material fact, and (b) that the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This instructs us that a fact is "material" if proof of its existence or nonexistence

---

**1.** U.S. Const. Amend. VII provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the rights of trial by jury shall be preserved, and

no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."

would effect the outcome of the lawsuit under the law applicable to the case. *Id.* at 248, 106 S.Ct. 2505; *Levendos v. Stern Entertainment Inc.,* 860 F.2d 1227, 1233 (3d Cir.1988). We are further instructed that an issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hankins v. Temple University,* 829 F.2d 437, 440 (3d Cir.1987); *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.,* 812 F.2d 141, 144 (3d Cir. 1987).

Under this regimen that we follow, the Court is required to view the evidence in the light most favorable to the non-moving party. Consistent with this principle, the non-movant's evidence must be accepted as true and all reasonable inferences must be drawn in the non-movant's favor. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990). However, the non-moving party may not rest on the bare allegations contained in his or her pleadings.

■ The Government asserts that the credibility of Claimant and her witnesses raises factual issues which preclude summary judgment. In its Second Supplemental Brief in Opposition to Claimant's Motion for Summary Judgment, the Government properly argues that the Court should not make pure credibility decisions at a hearing on summary judgment. (Doc. 27, at 1–2). The Government, in its own citations however, points out that an opponent to a motion for summary judgment cannot prevail merely by discrediting the credibility of the movant's evidence. (Id., at 2). Rather, it must produce some *affirmative evidence* on point. The nonmoving party is required by Federal Rule of Civil Procedure 56(e) [2] to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corporation v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.,* 812 F.2d 141, 144 (3d Cir.1987).

When the question for decision concerns drawing inferences from undisputed evidence, or interpreting and evaluating evidence to derive legal conclusions, a trial may not add to the Court's ability to decide. Such is the case here.

B. *CIVIL ASSET FORFEITURE REFORM ACT*

On April 25, 2000, Congress passed the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106–185, 114 Stat. 202, to address concerns associated with federal civil forfeitures. Since the Government commenced this action after August 23, 2000, the date on which CAFRA became effective, CAFRA applies to this case.

**2.** In relevant part, Rule 56(e) states:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

CAFRA overhauled the procedures for civil judicial forfeiture proceedings. Significantly, the Government now has the burden of proving by a preponderance of the evidence that the property is subject to forfeiture. *See* 18 U.S.C. § 983(c)(1). Once the Government makes this showing, the burden shifts to the claimant. The claimant may choose to assert the "innocent owner defense."[3] *See* 18 U.S.C. § 983(d)(1). "Innocent ownership" remains an affirmative defense, as it was under all previously enacted forfeiture statutes, notwithstanding the fact that CAFRA now shifts the initial burden to the Government in its case-in-chief.

 As a threshold matter, for the claimant to have standing[4] to assert this defense, the claimant must prove by a preponderance of the evidence that he or she has a legal interest in the property in accordance with state property law. *See* 18 U.S.C. § 983(d). Under CAFRA, "Owner":

(A) means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; and

(B) *does not include-*

(i) a person with only a general unsecured interest in, or claim against, the property or estate of another;

(ii) a bailee unless the bailor is identified and the bailee shows a colorable

legitimate interest in the property seized; or

(iii) *a nominee who exercises no dominion or control over the property.*

18 U.S.C. § 983(d)(6) (emphasis added).

In a case where the owner claims to have a pre-existing interest, i.e., an interest that existed before the property was used in the crime, § 983(d)(2)(A) provides: "the term 'innocent owner' means an owner who(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A).

There is no dispute in this case that the Honda was used by Mase to facilitate the illegal transaction that took place on October 19, 2001. As such, the Government has met its initial burden and has shown that it had cause to commence the *in rem* forfeiture proceeding. *See* 18 U.S.C. § 983(c). Thus, the only way for Claimant to prevent the forfeiture is to establish that she is an "innocent owner" under CAFRA.

1. *OWNERSHIP UNDER STATE LAW*

 Pursuant to the framework set forth above, Marckesano must first prove by a preponderance of the evidence that she has an ownership interest in the Honda that existed at the time of the illegal

---

**3.** The innocent owner defense was previously codified in 21 U.S.C. § 881(a)(4) (1994).

**4.** This is separate and distinct from the requirement that the claimant must establish that he or she has standing to litigate the claim sufficient to satisfy the case or controversy requirement under Article III of the United States Constitution. Once the claimant establishes a right to litigate the issue, the claimant must prove indicia of ownership that

allows the affirmative defense to be asserted in the course of the trial or hearing on the motion for summary judgment.

In this case, there is no dispute that Claimant has Article III standing to file a petition to challenge the forfeiture. She must now establish, on the merits, a property interest which would entitle her to relief. *See United States v. Hooper*, 229 F.3d 818, 820 n. 4 (9th Cir.2000) (cites omitted).

conduct which gave rise to the forfeiture. *See* 18 U.S.C. § 983(d)(2)(A). The test of ownership is determined by the law of the state in which the interest arose. *See U.S. v. One 1973 Rolls Royce, VIN SRH–16266 By and Through Goodman,* 43 F.3d 794, 806 n. 8 (3d Cir.1994). Although the res is now located in Pennsylvania, the Honda was purchased at a car dealership in New York and registered in Tennessee.[5]

■ The Government argues that Tennessee law governs Marckesano's ownership interest in the Honda. We agree that Tennessee clearly has an interest in having its laws applied in this case. Under the law of Tennessee, an "owner" is "a person who holds the legal title of a motor vehicle...." Tenn.Code Ann. § 55–12–102 (2002). "Proof of the registration of [an automobile] in the name of any person shall be prima facie evidence of the ownership of the [automobile] by the person in whose name it is registered." Tenn.Code Ann. § 55–10–312 (2002); *see also Reece v. State,* 273 S.W.2d 475, 478, 197 Tenn. 383, 388 (Tenn.1954) ("[P]roof of such act is evidence from which it can reasonably be found that the person in whose name the motor vehicle was registered was the owner thereof on the date of the registration."). This statute creates a rebuttable presumption. "In Tennessee, a certificate of title is not conclusive evidence of automobile ownership." *Smith v. Smith,* 650

S.W.2d 54, 56 (Tenn.Ct.App.1983) (cites omitted). In some cases, it is the "intention of the parties, rather than the certificate of title, [that] determines property rights in a vehicle."[6] *Id.*

Here, Claimant registered the Honda with the Tennessee Department of Safety to obtain a Certificate of Title on August 24, 2001. (Doc. 10, at Exhibit 17). The Certificate was issued on September 25, 2001. (Id.). There is no indication that Marckesano attempted to, or even intended to transfer title of the Honda to Mase. *See Smith, supra.* We therefore examine the circumstances of this case in light of the statutory presumption.

The Government argues that Marckesano can not be considered an "owner" pursuant to the Tennessee statute because the Honda is not registered in her legal name, Claire P. Marckesano. (Doc. 27, at 4). During the hearing, the Government spent a significant amount of time establishing that Claimant maintained two identities with different social security numbers and birth dates. Testimony revealed that Marckesano uses the two names for different purposes. For example: Claimant's passport is under the name "Claire P. Marckesano"; Claimant's driver's license is under the name "Kimberly A. Marckesano"; Claimant's employment identification cards use the names "Marckesano, Kim" and "Claire Kim P. Marckesano." The

---

**5.** Notwithstanding the fact that Marckesano considers her residence in Knoxville, Tennessee to be her primary residence, she testified that she has spent the majority of her time from 1998 until the present date at her Brooklyn, New York residence.

**6.** The court in *Smith* explained that Tennessee's earlier statutes regarding the issuance and transfer of certificates of title were enacted to deter trafficking in stolen cars. *See Smith,* 650 S.W.2d at 56 (*citing Hayes v. Hartford Accident & Indemnity Co.,* 57 Tenn.App. 254, 265, 417 S.W.2d 804, 809 (Tenn.Ct.App.

1967)). It appears that the statutory presumption has been relied upon in civil actions involving personal injuries and property damage to show that the car was being operated by the person in whose name the car was registered or by the registrant's agent. *See, e.g., Green v. Powell,* 22 Tenn.App. 481, 124 S.W.2d 269 (Tenn.Ct.App.1938).

In *Hayes,* the court clarified that a transfer of ownership of an automobile could be valid even though the transfer did not comply with the motor vehicle title laws. *Hayes,* 57 Tenn. App. at 267, 417 S.W.2d 804.

Government questions Claimant's "'adoption' of the name Kimberly A. Marckesano" and argues:

> From the claimant's testimony, it is unclear whether Kimberly A. Marckesano is another person whose identity the claimant is using, or simply an alias the claimant is using. In either case, claimant's admissions at the hearing create a genuine issue as to the validity of her ownership interest in the vehicle.

(Doc. 27, at 3–5).

The Government would have us convert this argument to testimony, when as a matter of fact, there is absolutely no testimony in the case that contradicts the Claimant's assertion that Kimberly A. Marckesano and Claire P. Marckesano are one and the same person. Claimant testified that when she first received her driver's license in New York State that, for reasons she cannot explain, her initial driving permit incorrectly listed her name as "Kimberly A. Marckesano" and listed an incorrect social security number and birth date. She went on at great length, however, to testify that she is actually the person named thereon, and that at times she also uses the name Claire P. Marckesano and is known by all parties to be the same person. Marckesano asserts that "[t]he alleged failure of the Claimant to title the vehicle in her so-called legal name is not dispositive of the Claimant's ownership claim." (Doc. 28, at 2). We agree.

While it is true we should not make credibility determinations on testimony proffered on a motion for summary judgment, we cannot simply accept argument that one party makes regarding the testimony. A party opposing a motion is required to produce some *affirmative evidence* and cannot expect the Court to make derivative determinations from the positive testimony offered in the case, simply on the basis of one party's argument

that the testimony may not be fully credible. It would be wrong to make a determination "deciding" credibility, but it would be worse to speculate about what a jury could decide.

The Government did not submit any evidence to prove that these two identities are associated with two different women. Regardless of the oddities, strangeness or uniqueness of the testimony in this case, there is no evidence to suggest anything but the fact that "Kimberly A. Marckesano" and "Claire P. Marckesano" refer to one individual: the Claimant. There may have been credibility issues raised by the testimony, but those issues impact on matters that are beyond the scope of this inquiry. Accordingly, we find that the Honda's registration in Claimant's name satisfies the statutory presumption of ownership under Tennessee law.

## 2. DOMINION AND CONTROL

Under CAFRA, a "nominee" owner "who exercises *no* dominion or control over the property" does not have standing to assert the "innocent owner" defense. *See* 18 U.S.C. § 983(d)(6) (emphasis added). We are guided by Pre–CAFRA law in our determination of whether Marckesano is a nominal owner of the Honda. *See One 1973 Rolls Royce*, 43 F.3d at 806, n. 8 (cites omitted) (holding that nominal or straw owners lack standing to contest forfeiture); *U.S. v. One 1990 Chevrolet Corvette, VIN No. 1G1YY3384L5104361*, 37 F.3d 421, 422 (8th Cir.1994) (cites omitted) (denying claimant standing where she did not have the finances to pay for the car and was unfamiliar with the car's features and controls); *United States v. One 1981 Datsun 280ZX*, 563 F.Supp. 470, 475 (E.D.Pa.1983) (denying claimant standing even though car was titled in claimant's name since the claimant's son paid for the car, drove the car more frequently than

did the claimant, and was more likely "to suffer from the Datsun's forfeiture"); *United States v. One 1971 Porsche Coupe Auto., VIN 9111100355*, 364 F.Supp. 745, 748 (E.D.Pa.1973) (holding that claimant was merely nominal owner since he made gift of car to his son who had sole possession of the car and exercised dominion and control over it).

■ The Government contends that Marckesano was merely the nominal owner of the Honda, while Mase, in fact, exercised "dominion and control" over the vehicle. (Doc. 15, at 8). The Government offers as proof items apparently belonging to Mase that were found in the car, including a notebook, compact discs and academic calendars. (Id., at Exhibits 3–6). Additionally, the Government relies on two receipts that show Mase had twice changed the oil in the Honda during a period of less than one month. (Id., at Exhibits 1–2). This evidence, according to the Government, suggests that Mase drove the Honda on a regular basis during the period of September 8, 2001, (the date of the first oil change) until October 5, 2001, (the date of the second oil change). (Id., at 8–9).

Moreover, the Government argues that Mase held himself out as the true owner of the Honda. The only evidence submitted by the Government regarding this amounts to alleged statements made by Mase at the time he was using the car. Mase testified that he was inclined to brag about his ownership of certain possessions during the time he was involved in selling drugs. More telling in this case is the fact that Mase testified during the same period of time he was discussing matters with the

agent who testified on behalf of the Government, that he, Mase, had been using drugs extensively. Mase has since been convicted of drug charges and is presently serving time. All of this latter information concerning Mase would lead one to discount almost entirely any statements he made during the time he was under the influence of drugs, and particularly during the time he was trying to induce the others, including the Government's witness, to become involved in the drug business with him.

During the hearing on the Motion for Summary Judgment, Claimant testimony's demonstrated that she was more than a nominal owner. No one disputes the fact that Mase, rather than Claimant, had possession of the Honda when it was seized on October 19, 2001. However, the testimony of all parties in this case, including Mase, indicated that Claimant here retained full dominion and control over the car and only allowed Mase to use the car when he made a specific request for it. That included the fact Claimant chose the model and options, bought the car with her own funds, insured the car, used the car herself, and retained control over the two set of keys to the Honda. It appears Marckesano intended that the car would remain in her control and that anyone else who would use it, would have to seek and receive her permission. All of this testimony is uncontradicted.

The cases cited by the Government in the Second Supplemental Brief, (Doc. 27), involved ownership, not of automobiles, but of monies that were seized in forfeiture cases.[7] The discussion of an ownership

---

7. *See, e.g., U.S. v. $100,348.00 U.S. Currency*, 157 F.Supp.2d 1110 (C.D.Cal.2001). In that case, the property involved was U.S. Currency, not an automobile, and the Court held that there were genuine issues of material fact

whether the currency was related to the illegal activity in the case. The parties, as a matter of fact, agreed that the claimant did not have an ownership interest in the proper-

interest in the monies in those cases differs entirely from the fact situation in this case. It is of no help in determining the ownership of the vehicle involved in this matter, and certainly does not buttress the Government's claim that there is a matter fact to dispute in this case.

While it is obvious that Mase drove the Honda on occasion, there is no indication that Marckesano was a "nominee who exercised no dominion or control over the property." We find that Marckesano has sufficient interest in the Honda to satisfy this threshold inquiry and she has standing to assert the "innocent owner" defense.

### 3. INNOCENT OWNER

■ In order for Marckesano to succeed on her "innocent owner" defense, she must prove either that she did not know that the Honda was involved in criminal activity *or* that she did all that could reasonably expect under the circumstances to end the criminal use of the property, once she learned about it. *See* 18 U.S.C. § 983(d)(2)(A).

Prior to the enactment of CAFRA in 2000, a claimant contesting the forfeiture of a vehicle could assert the affirmative defense as set forth in 21 U.S.C. § 881(a)(4)(C) (1994). That subsection stated: "no conveyance shall be forfeited under this paragraph to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge, consent, or willful blindness of the owner." 21 U.S.C. § 881(a)(4)(C) (1994), *amended by* 21 U.S.C. § 881 (2000). The burden is on the claimant asserting the affirmative defense to prove absence of actual knowledge. *See One 1973 Rolls Royce*, 43 F.3d at 810–11 (declaring that actual knowledge can be "proven by inference from circumstantial evidence"). This inquiry does not turn on the claimant's constructive knowledge. *See U.S. v. Premises Known as 2639 Meetinghouse Rd., Jamison, Pa.*, 633 F.Supp. 979, 992 (E.D.Pa.1986). Since the Third Circuit has not yet addressed what constitutes "knowledge" under CAFRA, we will continue to apply the "actual knowledge" test.[8]

In Marckesano's Brief in Support of the Motion for Summary Judgment, she stated:

"On October 19, 2001, Michael Mase asked Marckesano to use her vehicle to drive his girlfriend to Pennsylvania where she resided. Marckesano did not know that Mase had arranged to deliver 1,000 ecstasy tablets to an undercover trooper... Marckesano had no knowledge that her son was trafficking in ecstasy or any other controlled substance."

---

ty involved and thus the case is of little help in deciding the issue before this Court.

**8.** We note that the innocent owner defense under CAFRA does not have a provision for "willful blindness." Nevertheless, the Third Circuit concluded that under pre-CAFRA law, "knowledge" includes a "willful blindness" component. *See One 1973 Rolls Royce*, 43 F.3d at 810.

The test for "willful blindness" is a subjective one. *Id.* at 808. The inquiry is whether "the [claimant herself] was subjectively aware of the high probability of the fact in question, and not merely [if] a reasonable [person] would have been aware of the probability." *Id.* (*citing United States v. Caminos*, 770 F.2d 361, 365 (3d Cir.1985)). This test places the burden on the person who is suspicious of particular circumstances to investigate; if she does not do so, she is willfully blind. *Id.* at 810. We find no proof that would indicate Marckesano knew or deliberately avoided knowing that there was a high probability the Honda was used for drug trafficking. As such, we cannot conclude that she was willfully blind.

(Doc. 12, at 3). Additionally, Marckesano asserts: "Prior to October 19, 2001, [she] had no reason to believe Michael Mase was going to use her vehicle in any alleged illegal activity." (Doc. 14, at 2).

The uncontradicted evidence supports Marckesano's contention that she did know of the October 19, 2001, incident involving the sale of Ecstasy. The Government has failed to prove any complicity on Marckesano's part in Mase's illegal activities that would suggest she knew that the Honda was being used in drug transactions. While the Government finds suspect the manner in which the Honda and the options were paid, there is no evidence to support any allegations of Marckesano's involvement in the illegal activity.

The Government has failed to produce any proof to contradict the evidence that Claimant has shown as far as the ownership of the Honda is concerned, or with respect to Claimant's dominion and control over the Honda. Claimant has proven by a preponderance of the evidence that she is an innocent owner entitled to recover the Honda. Claimant's Motion for Summary Judgment is GRANTED.

## C. *AMENDMENT OF PLEADINGS*

During the hearing on Claimant's Motion for Summary Judgment, Claimant made a Motion to Amend the Pleadings to Conform with the Evidence pursuant to Rule 15(b) of the Federal Rule of Civil Procedure.[9] Rule 15(b) applies: "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties." Fed.R.Civ.P. 15(b).

The rule contemplates amendments made during or after trial, due to the emergence of novel issues not covered in the operative pleadings. "The rule is applicable only where it clearly appears from the record that an issue not raised in the pleadings and not preserved in the pretrial order *has in fact been tried* and that this procedure has been authorized by express or implied consent of the parties." *Systems Inc. v. Bridge Elecs. Co.*, 335 F.2d 465, 466–67 (3d Cir. 1964) (emphasis added). "Rule 15(b), however, is limited to situations where the issue has been tried. [Where] no trial has occurred, [the movant] can find no solace in Rule 15(b)." *Albanese v. Bergen County, New Jersey*, 991 F.Supp. 410, 421 (D.N.J.1998). *Vosgerichian v. Commodore Intern. Ltd.*, 1998 WL 966026, at *3 (E.D.Pa.1998), *aff'd*, 191 F.3d 446 (3d Cir.1999). As in *Vosgerichian*, Claimant made her Motion to Amend after the filing of a Motion for Summary Judgment; there has been no trial in this case. Thus, she may not amend the pleadings under Rule 15(b).

In the interests of justice, we shall construe Claimant's Motion to be a request for leave of Court to Amend the Pleadings pursuant to Rule 15(a). Under this Rule, a party may amend the pleadings within twenty days after they are served. Fed.

---

**9.** Federal Rule of Civil Procedure 15(b) governs the amendment of pleadings to conform to the evidence. The Rule states in part: Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

Fed.R.Civ.P. 15(b).

R.Civ.P. 15(a). Since Claimant's motion was brought after Rule 15(a)'s right to amend as a matter of course expired, the amendment can be made "only by leave of court or by written consent of the adverse party." *Id.*

■ The Supreme Court set forth a standard for courts to follow:

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Rule 15(a) has been liberally interpreted in accordance with the principals of the Federal Rules. *See Coopersmith Bros., Inc. v. Stefko Boulevard Shopping Center,* 30 F.R.D. 1, 2 (E.D.Pa.1962). The decision whether to grant leave to amend is within the sound discretion of the trial court. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

■ In this case, Claimant seeks to amend all Pleadings to refer to herself as "Kimberly A. Marckesano, a/k/a Claire P. Marckesano."[10] As discussed at length in Section B, *supra,* the Government provided evidence that showed Claimant utilizes two names, "Kimberly A. Marckesano" and "Claire P. Marckesano," and that each name is associated with different social security numbers and birth dates. Claimant admitted to this on direct and cross

examination, but she attempted to clarify when and why she uses the different names.

The Government objected to Claimant's Motion to Amend on the grounds that an amendment would permit Claimant to remove any taint on her credibility that emerged during the hearing. Claimant, however, stated that an amendment would merely have the effect of alleging that "Kimberly A. Marckesano" and "Claire P. Marckesano" were the same person. Claimant noted that the Government would still have the opportunity to prove that Marckesano is not who she says she is, but the Government could not do so by innuendo and inferences.

■ The Court must consider the merits of a proposed amendment of a defective allegation before determining whether to grant leave to amend. *See Kiser v. General Elec. Corp.,* 831 F.2d 423, 427 (3d Cir.1987), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1078, 99 L.Ed.2d 238 (1988). The "touchstone question" in considering the motion to amend is "whether the nonmoving party will be prejudiced if the amendment is allowed." *Howze v. Jones Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir.1984). Prejudice in the context of Rule 15(a) "means undue difficulty in prosecuting [or defending] a lawsuit as a result of a change in tactics or theories on the part of the other party." *Tarkett Inc. v. Congoleum Corp.,* 144 F.R.D. 289, 291 (E.D.Pa.1992) (*quoting Deakyne v. Commissioners of Lewes,* 416 F.2d 290, 300 (3d Cir.1969)). As stated above, the two identities used by Claimant do not affect our determination of whether there is a genuine issue of material fact which would preclude summary judgment.

At this stage of the proceedings, the Court is unwilling to find that the amend-

---

**10.** Currently, the Pleadings refer to Claimant as "Kimberly A. Marckesano."

ment to the Claimant's Pleadings would be futile or serve no legitimate purpose. Because the facts and circumstances relied upon by the Claimant appear to be a proper subject for amendment, she ought to be afforded an opportunity to do so. *See Foman,* 371 U.S. at 182, 83 S.Ct. 227. Accordingly, Claimant's Motion to Amend the Pleadings is GRANTED.